### JACOB T. WEED *vs*. THE BOROUGH OF GREENWICH.

The charter of a borough gave the warden and burgesses authority to order the removal of all encroachments upon any public highway of the borough, and upon the order not being obeyed to cause them to be removed. The warden, acting officially and under a vote passed by the warden and burgesses, caused a fence of the plaintiff along the line of the highway to be removed, the plaintiff not obeying an order previously made for its removal. The fence was in good faith supposed by the warden and burgesses to be an encroachment, but was not so in fact. In an action of trespass brought against the borough, it was held—

1.   That the grant of power, though to the warden and burgesses, was in reality to the borough.

2.   That the power to remove encroachments was a power asked for and obtained by the borough for its own advantage and not for the benefit of the public.

3.   That in the removal of encroachments it was therefore exercising a privilege, not discharging a governmental duty.

4.   That the borough was liable for the acts of the warden.

[Two Judges dissenting.]

TRESPASS *qu. cl. fr.*, brought to the Superior Court in Fairfield County. The defendants pleaded the general issue, with notice that they should show that the acts complained of were done by the officers of the borough, under directions from the borough, in removing certain encroachments made by the plaintiff upon a public street of the borough, and were in

---

* Judge HOVEY of the Superior Court sat in the place of Judge LOOMIS, (who had gone abroad for his health,) in the cases of *Weed* v. *Borough of Greenwich*, *Mead* v. *N. York & Housatonic R. R. Co.*, and *King* v. *The same*.

pursuance of authority conferred upon the borough by its charter. The case was referred to a committee, by whom the following facts were found:—

The plaintiff had been the owner of the premises on which the trespass was claimed to have been committed since the year 1832. In April, 1871, John Voorhis, warden of the borough of Greenwich, and acting as such in his official capacity, and pursuant to resolutions passed and proceedings had by the court of warden and burgesses of the borough relative to removing encroachments on the highways, caused the plaintiff's fence in front of his house, and all his garden fence fronting on the highway, to be taken up and laid back on the plaintiff's premises, doing as little injury as was possible in making the removal.

Upon the main question of fact in the case, namely, whether the fence of the plaintiff, so removed, was over the line of and upon the highway, and therefore an encroachment on the highway, a great number of witnesses was introduced and testified, and the committee found that at the time of the trespass alleged the plaintiff's fences were not an encroachment upon the highway, and that the same were not lawfully removed.

It was claimed on the part of the defendants that the borough had never at any borough meeting authorized or ordered or ratified any such action on the part of any of its agents or officers; that whatever was done in the way of authorizing the taking down and removal of the fences of the plaintiff was done entirely by the court of burgesses of the borough, and that no borough meeting had ever authorized or ratified their proceedings; and that, if any trespass was committed, the borough of Greenwich was in nowise liable therefor.

The committee found that the borough, acting as such, did never, at any borough meeting, authorize, sanction or ratify the trespasses set forth in the plaintiff's declaration; that whatever was done in the premises was done pursuant to the votes, resolutions and action of the warden and burgesses of the borough; that the warden and burgesses, in whatever

action they took, acted under the provisions of section 7 of amendments to the charter of the borough, passed at the May session, 1864, of the General Assembly, and which provides as follows:—

"The warden and burgesses are hereby authorized to direct the proprietors of lands fronting any street, highway, public walk or ground, to set out and straighten his, her or their fences in such manner as said warden and burgesses may direct, and said warden and burgesses are hereby empowered, from time to time, to order the removal of all nuisances within the limits of the said borough, and all incumbrances, encroachments or obstructions erected, placed, laid, left, deposited or continued upon any highway, walk, or public ground in said borough; and the person or persons committing or continuing, erecting, placing, laying, leaving or depositing any such nuisances, encroachments or obstructions, shall remove the same upon being notified of such order; and in case such person or persons so committing or continuing, erecting, placing, laying, leaving or depositing any such nuisances, encroachments or obstructions as aforesaid, shall fail to remove the same upon being ordered so to do as aforesaid, then said warden and burgesses shall remove or cause to be removed all such nuisances, incumbrances, encroachments or obstructions; and said borough shall recover the expense of such removal from said person or persons so committing, continuing, erecting, placing, laying, leaving or depositing such nuisances, encroachments, incumbrances and obstructions as aforesaid."

If the court should be of opinion that upon the foregoing facts the borough of Greenwich was liable, the committee found that the plaintiff was entitled to recover damages in the sum of one hundred dollars.

The court (*Beardsley, J.,*) upon these facts rendered judgment for the defendants, and the plaintiff brought the record before this court by a motion in error. The case was argued at a former term of the court, but was re-argued at the present term by order of the court.

*W. K. Seeley* and *S. Fessenden*, for the plaintiff.

1. The people comprising the borough of Greenwich sought certain privileges from the state, which were not possessed by them as citizens of the town of Greenwich. They were granted a charter, which they accepted, and by which they were authorized through their officers, the warden and burgesses, to do certain acts which were for their private advantage as a corporation. They were authorized to lay out new streets, walks and public grounds, and to alter and enlarge any existing ones; to order the construction of sidewalks and gutters; and to order and cause to be removed all nuisances and encroachments upon any of the streets within the limits of the corporation. The borough through its officers undertook the duties imposed upon it by the charter, and removed a claimed encroachment upon one of the streets. The act was done in good faith, within the scope and in the performance of corporate powers constitutionally conferred, and in the execution of a corporate duty, which, when executed, would have resulted, had the claim of the borough been true, in a special advantage to it. The defendants are therefore liable both upon principle and authority. The rule is clearly stated by Dillon (Mun. Corp., § 766). "The rule of law is a general one, that the superior or employer must answer civilly for the negligence or want of skill of his agent or servant in the course or line of his employment, by which another is injured. Municipal corporations, under the conditions. herein stated, fall within the operation of this rule of law, and are liable, accordingly, to civil actions for damages, when the requisite elements of liability co-exist. To create such a liability, it is fundamentally necessary that the act done which is injurious to others, must be within the scope of the corporate powers as prescribed by charter or positive enactment (the extent of which powers all persons are bound at their peril to know); in other words, it must not be *ultra vires* in the sense that it is not within the power or authority of the corporation to act in reference to it under any circumstances." The defendants claimed below, that as the fence in fact was not within the limits of the highway, and therefore

no encroachment, the borough could not be liable, as the charter did not authorize the borough, through its officers, to remove a fence not an encroachment; that the act was *ultra vires*. Such is not the rule; good sense and the authorities are alike against the claim. *Thayer* v. *City of Boston*, 19 Pick., 511; *Howell* v. *City of Buffalo*, 15 N. York, 512, 519; *Bennett* v. *City of Buffalo*, 17 id., 383; *Pekin* v. *Newell*, 26 Ill., 320; Dillon Mun. Corp., §§ 769, 770.

2. But it is claimed that the borough is not liable, because the warden and burgesses were not its officers or in the performance of corporate powers and duties, but were public officers and in the performance of public duties simply. In the consideration of this subject it must be remembered that the officers of these corporations and their duties under their charters are, in a broad sense, public. They directly, in most cases, and in all indirectly, affect the interest of the general public with whom they have relations; but while this is true, yet in a legal sense these officers and their duties under their charters are mostly of a corporate and private character. They are so unless they are public in the sense of being governmental. While, therefore, it is true that the distinction between officers of the corporation and public governmental officers, and between the duties that are corporate and the duties that are purely public and governmental, have been the subject of much discussion and some difference of views, yet the authorities would clearly appear to class these officers and their duties under the 7th section of the charter, as officers of the corporation and as corporate duties, as contradistinguished from public governmental officers and public governmental duties. The principle upon which these municipal corporations are liable is well stated by CARPENTER, J., in the case of *Jones* v. *City of New Haven*, 34 Conn., 14. "But when a corporation is charged with the performance of some public duty, as a condition, express or implied, upon which it holds its corporate powers; when a grant is made to a corporation of some special power or privilege at its request, out of which public duties grow, and when some special duty is imposed upon a corporation not belonging to it under the general law,

with its consent; in these and like cases, if the corporation is guilty of negligence in the discharge of such duty, thereby causing injury to another, it is liable to an action in favor of the party injured. The ground of liability in this class of cases seems to be, that the defendant corporation has for a consideration voluntarily contracted to discharge the duty in question. In respect to such duties a town or city is not a mere municipal corporation, but is a private one, and liable as an individual would be under the same circumstances." The same rule is also stated in the cases of *Conrad* v. *Village of Ithaca*, 16 N. York, 158, and *Weet* v. *Village of Brockport*, id., 161, both of which cases are cited with approval in *Jones* v. *New Haven*. And Judge Cooley in his treatise holds to the same view. Cooley's Const. Lim., 2d ed., 247. The same rule was again laid down in the recent case of *Lee* v. *Village of Sandy Hill*, 40 N. York, 442, decided in 1869. This case has recently been affirmed by the case of *Buffalo & Hamburg Turnpike Co.* v. *City of Buffalo*, 58 N. York, 639, decided in 1874. See also *Yates* v. *City of Milwaukee*, 10 Wall., 497; *Hamilton* v. *City of Fond du Lac*, 40 Wis., 47, 51; *Woodcock* v. *City of Calais*, 66 Maine, 234; *Sheldon* v. *Village of Kalamazoo*, 24 Mich., 383; *Soulard* v. *City of St. Louis*, 36 Misso., 546; *Allen* v. *City of Decatur*, 23 Ill., 332; *City of Chicago* v. *Joney*, 60 id., 386; *City of Chicago* v. *McGraw*, 75 id., 566; *Maximilian* v. *Mayor &c. of New York*, 62 N. York, 166; *Barnes* v. *District of Columbia*, 91 U. S. Reps., 540.

3.  If it should be said that this grant of power, or imposition of duties, under the 7th section of the charter, is not to the borough as a corporation, but to the warden and burgesses as individuals, we cite the decision in the case of *Weet* v. *Village of Brockport*, 16 N. York, 170, where Selden, J., in giving the opinion, says: "In all charters creating corporations, powers conferred upon those who stand in place of and represent the corporate body, are deemed to be conferred upon the corporation itself. The cases which prove this are innumerable, and I shall assume it without further argument." The cases of *Lee* v. *Village of Sandy Hill*, 40 N. York, 442,

*Buffalo & Hamburg Turnpike Co.* v. *City of Buffalo*, 58 id., 639, and *Barnes* v. *District of Columbia*, 91 U. S. Reps., 540, maintain the same view.

*J. B. Curtis* and *H. W. R. Hoyt*, for the defendants.

1. The case under consideration presents the necessity for a careful consideration and separation of the different powers conferred upon municipal corporations, and a like careful consideration and separation from those powers of the power directly conferred upon the individuals who are at the same time officers of the corporation, who in the exercise of the powers act as officers of the law and not as agents of the corporation. This distinction is well stated in the case of *Lloyd* v. *Mayor &c. of New York*, 5 N. York, 370. The city of New York possesses two kinds of powers, one governmental and public, and to the extent they are held and exercised it is clothed with sovereignty. The others are private, and to the extent they are held and exercised it is a legal individual. The former are given and used for public purposes, the latter for private purposes. While in the exercise of the former the corporation is a municipal government, in the exercise of the latter it is a corporate legal individual. The power to construct, maintain and repair highways, and to remove nuisances and encroachments therefrom, is a public governmental duty. It is a duty belonging originally to the state, and is for the benefit of the public, and is imposed upon the several municipal and *quasi* corporations by state legislative authority. Angell on Highways, 2d ed., § 302; *Borough of Stonington* v. *States*, 31 Conn., 213. The duty to construct, maintain and repair highways imposed upon such corporations is not in any sense private, but is a power exercised by the corporation for the state from whence the power is derived. *Chidsey* v. *Canton*, 17 Conn., 478. But the construction and maintenance of sewers, the laying out and keeping in repair of a park, the lighting of the streets of a city or a borough by night, the supplying of such city or borough with water, &c., are matters of a private character. They are regarded in law as solely for the benefit of the corporation

and not as matters of general concern to the people of the state.  *Jones* v. *City of New Haven*, 34 Conn., 12; *Bailey* v. *Mayor &c. of New York*, 3 Hill, 538.   The removal of nuisances and obstructions from highways is a public governmental duty as much as the duty to construct and repair the same; and when such power is vested in individuals who are at the same time officers of a municipal or *quasi* corporation, they, to the extent of the powers vested in them by the law for that purpose, are officers of the state, or as they are sometimes termed, officers of the law.   It being conceded that the construction and maintenance of highways is a public governmental duty, it is very clear that if the borough had taken upon itself under the statutes the obligation to repair the highways within its limits, it would be liable to the same extent and in the same general manner as a town is now liable.   If the selectmen of a town fail to keep a highway in repair, in case of injury to persons or property, the town is clearly liable.   If the warden and burgesses should fail to do the same thing, and a like injury should result, the borough would be clearly liable.   If the selectmen should commit a trespass in repairing a highway, and while acting for the town, in the discharge of the obligation resting upon the town to repair highways, such town would be liable.   If the warden and burgesses should commit a like trespass in performing the same duty, and while acting as agents of the borough, in the discharge of the obligation to repair highways, the borough would be liable.   In the case of *Thayer* v. *City of Boston*, 19 Pick., 511, the officers of the city were acting for the city under the general powers conferred upon it to maintain its highways.   They did not act under a special statute conferring upon them special powers as individuals and directing them how and in what manner to execute such power.   There is a broad distinction between a power of a public character conferred upon a town or other municipal corporation, and a power of a public character conferred upon the individuals who are at the same time the officers of such town or other municipal corporation; in the former case the town or other municipal body acts through its agents, and the act of the

agent is the act of the corporation. In the latter case the individuals act by virtue of a special statute, which confers certain powers upon them as individuals and thereby constitutes them officers of the state or officers of the law, and directs them as to the manner in which such power is to be executed. They perform a judicial as well as an executive act; the power conferred upon them compels them to exercise judgment, to give notice, and to execute. They act in a judicial capacity as much as appraisers of land, distributors of estates, or officers of the peace, where they arrest and commit on plain view and with personal knowledge. *Tomlinson* v. *Leavenworth*, 2 Conn., 294. The power conferred upon such persons is not for the special benefit of the borough, but for the public. There is no power in the borough to control their action. The borough could not, if it would, direct them in what manner they should proceed; it could not direct them that a removal should take place before giving notice, and it could not forbid a removal by vote of the borough. They are directed by law to perform acts requiring a promptness quite incompatible with a consultation with the borough, and certainly, if the borough cannot control their action, it should not be responsible for their conduct. But the case under consideration presents this peculiar fact, that the borough had no power over the highway in question, and it is difficult to see how such a power can be inferred from the language of the law. *States* v. *Stonington*, 31 Conn., 213; *Walcot* v. *Swampscott*, 1 Allen, 101; *Butterick* v. *City of Lowell*, 1 Allen, 174; *White* v. *Phillipston*, 10 Met., 110; *Hafford* v. *City of New Bedford*, 16 Gray, 297; *Grigg* v. *Foot*, 4 Allen, 197; *Child* v. *City of Boston*, 4 Allen, 51; *Haskell* v. *New Bedford*, 108 Mass., 211; *Russell* v. *Mayor &c. of New York*, 2 Denio, 461, 481; *Martin* v. *Mayor &c. of Brooklyn*, 1 Hill, 544, 550; *Jewett* v. *City of New Haven*, 38 Conn., 368, 372; *Tomlinson* v. *Leavenworth*, 2 Conn., 292; *Gregory* v. *Bridgeport*, 41 Conn., 84.

2. The claim of the plaintiff that the warden and burgesses acted as the agents of the borough, is not established by the finding of the committee or of the court. Indeed the

committee find that the borough has not at any borough meet-
ing authorized, sanctioned, ratified or confirmed their action,
nor has the committee or court found that the borough have
ever conferred upon them any general power over the matter
under consideration; and this being a question of fact and
not of law, leaves the plaintiff no foundation upon which to
rest his claim.    *Thayer* v. *City of Boston*, 19 Pick., 516.
The rule is well established that a municipal corporation is
not responsible for the tortious or illegal acts of its officers,
although they act *colore officii*, unless such acts are done by
such officers within the general scope of their employment, or
have been ratified and confirmed by the corporate body.
Dillon Mun. Corp., § 770; *Perley* v. *Inhabitants of George-
town*, 7 Gray, 464.    The plaintiff also claims that the borough
in this case is responsible to the same extent and in the same
manner as towns are for the neglect of their agents in the
repair of highways.    But it has already been shown that the
borough neither had at the time, nor now has, any control or
authority to repair highways or remove obstructions, nor does
the charter confer such power.    And in order to render the
corporation liable, such responsibility must be directly placed
upon the borough by the act of incorporation or by the gen-
eral law.    *Hewison* v. *New Haven*, 34 Conn., 136; *Chidsey*
v. *Canton*, 17 Conn., 475; *Mower* v. *Leicester*, 9 Mass., 247;
Dillon Mun. Corp., § 762.    In this case the power conferred
is one of merely public and governmental character and has
not coupled with it any actual or implied responsibility to
private individuals.    Dillon Mun. Corp., § 39, and note;
*Hewison* v. *New Haven*, 37 Conn., 481.    But it is said that
the expense of such removal may be recovered in an action
brought by the borough, and this makes the warden and bur-
gesses the agents of the borough.    Let us for a moment
examine this question.    The true interpretation of this part
of the act of incorporation is, that the expenses of the warden
and burgesses are to be paid by the borough, and that the
borough shall afterwards have the right to recover, and shall
recover, such expenses from the delinquent.    But this right
does not make the warden and burgesses agents of the bor-

ough. Most of our public officers and those employed by them in the discharge of their public duties are paid from the treasury of some municipal or *quasi* corporation. Thus a municipal police are paid by the corporation, but they are in no sense its agents in the discharge of their public duties. A fire department is frequently paid by the city to which they belong, but are not its agents. *Hafford* v. *City of New Bedford*, 16 Gray, 297, 300; *Jewett* v. *City of New Haven*, 38 Conn., 368. In the case of *English* v. *New Haven & Northampton Co.*, 32 Conn., 240, it appears that the common council of New Haven were empowered by an amendment to the city charter to order the widening of a bridge over the railroad of the defendants, and in case they neglected to comply with the order the common council were directed to widen such bridge at the expense of the city, and the city treasurer was directed to recover such expense in a suit brought in his own name. And yet this court held that the common council were not agents of the city in ordering the widening of the bridge and enforcing the performance of the order, but officers of the law. No argument can be drawn from the fact that the people within the limits of the borough applied to the General Assembly for their charter and afterwards accepted the same. It is almost always the case that the people of a certain locality apply for a charter, and then ask to have certain powers conferred on the corporation of a private character, and certain powers of a public character, and for powers to be conferred upon certain individuals, constituting them officers of the law for a special purpose; but such application and acceptance neither makes the individuals applying, nor the corporation, liable for the negligence or the misconduct of such officers. The decisions of the courts of New York have been largely cited and commented upon, to establish the doctrine of the liability of the borough. But these decisions are founded upon statutes making certain municipal corporations of that state liable for the acts of certain officers, who, but for such statutes, would be public officers, and not officers of the corporation. 2 N. York Rev. Statutes, 135, 143, 165, 167; 3 id., 171; Statutes of 1859, 713. In the case of *Lee*

v. *Village of Sandy Hill*, 40 N. York, 442, the commissioners of highways by the charter had the same powers as commissioners of towns, and the court held that the village was liable in the same manner as a town. In the case of *Conrad* v. *Village of Ithaca*, 16 N. York, 158, the trustees of the village were made commissioners of highways by the charter, and the court held that the village was responsible for their acts in the same manner as a town is responsible.

3. The borough of Greenwich had no interest in the removal of the supposed encroachments. It was matter of public interest to the people of the state at large and not of private interest to the borough. The state owned the easement, the proprietors of the adjoining land held the fee of the highway, and the agents and officers of the state had the control of such highway; how then can it be said that the borough had an interest in the matter? The want of interest involves a want of power, and is necessarily fatal to the claims of the plaintiff. *Gregory* v. *City of Bridgeport*, 41 Conn., 86. The defendants can therefore say that they had no duty to perform, no rights to defend, and no interests to protect.

PARDEE, J. In 1864 the legislature gave certain additional powers and privileges to the then existing borough of Greenwich by virtue of an amendment of its charter, which was accepted by the corporation and was in the following words:

"The warden and burgesses are hereby authorized to direct the proprietors of lands fronting any street, highway, public walk or ground, to set out and straighten his, her or their fences in such manner as said warden and burgesses may direct; and said warden and burgesses are hereby empowered, from time to time, to order the removal of all nuisances within the limits of the said borough, and all incumbrances, encroachments or obstructions erected, placed, laid, left, deposited or continued upon any highway, walk, or public ground in said borough; and the person or persons committing or continuing, erecting, placing, laying, leaving or depositing any such nuisances, encroachments or obstructions, shall

remove the same upon being notified of such order; and in case such person or persons so committing or continuing, erecting, placing, laying, leaving or depositing any such nuisances, encroachments or obstructions as aforesaid, shall fail to remove the same upon being ordered so to do as aforesaid, then said warden and burgesses shall remove or cause to be removed all such nuisances, incumbrances, encroachments or obstructions; and said borough shall recover the expense of such removal from said person or persons so committing, continuing, erecting, placing, laying, leaving or depositing such nuisances, encroachments, incumbrances and obstructions as aforesaid."

In April, 1871, the warden, acting in his official capacity and pursuant to votes theretofore passed by the court of wardens and burgesses under the grant of power in said amendment relative to the removal of encroachments upon the highways within the borough, took down the fence standing along the front line of a lot belonging to the plaintiff; thereupon he instituted this action of trespass against the borough; and the finding is that the fence, not being an encroachment, was unlawfully removed. The court rendered judgment for the defendants; the plaintiff filed a motion in error.

The governmental duty to keep highways within its limits in good and sufficient repair for public use is not placed upon the *borough*, but upon the *town* of Greenwich, which includes the former; but, for the purpose of enabling the borough at its pleasure to improve the appearance of the streets, and thus enhance the value of property within its limits, it asked for and received power to remove an encroaching fence, irrespective of the question whether or not in fact it constituted an obstruction to public travel. The corporation had legislaive permission to do such an act for its own advantage; it was under no legislative command to do it for the public safety.

The court of warden and burgesses constitutes the borough legislature; to this court the accepted charter granted power to take action for the corporation upon the general subject of

encroachments, to which the particular act complained of relates; they exercised all the powers of the borough in this behalf, and in respect to all external relations must be considered as identical with the corporation; although the grant is in form to the warden and burgesses it is in reality to the borough, to be exercised for its benefit; acting at their pleasure, presumably they acted only when the special interests of the borough were to be promoted; they were not elected by the corporation in obedience to any statute, for the purpose of performing a governmental duty. Thus representing and acting for the borough they ordered the removal of the fence, and the borough should redress the wrong occasioned by the performance of an act in its particular interest, for municipal immunity does not reach beyond governmental duty. It is contrary to all principles of natural justice that the residents within certain territorial limits should seek for and obtain corporate powers for the more ready accomplishment of undertakings specially advantageous to themselves, but not at all necessary for the public, and in such powers find relief for responsibility for wrongs upon private rights.

In the case before us, the warden and burgesses believed that the fence stood upon the highway and that they had the right to remove it; apparently the warden came to the execution of their mandate clothed with official authority and power, not intending any injury. In all like cases it is best for those concerned that the individual should respect that authority and submit to the exercise of it, having knowledge that if he can prove that he has suffered any wrong he can look to a responsible corporation rather than to an irresponsible individual for damages.

In support of the conclusion reached by us we quote some expressions of judicial opinion in this and other jurisdictions, remarking that some of them reach beyond the necessities of the case before us.

In *Danbury & Norwalk Railroad Co.* v. *Town of Norwalk*, 37 Conn., 109, the respondent town proposed so to construct a sewer, necessary for the drainage of a highway, as to discharge water upon a building belonging to the petitioner.

This court advised a permanent injunction, saying: "Upon the general question of the authority and duty of towns with respect to the proper maintenance of their highways there is no opportunity for controversy. The authority is clear and the duty imperative; always subject however to the salutary qualification, interposed for the protection of others, that this authority shall be so exercised, and this duty discharged in such a manner, as to occasion no wanton injury to the property or rights of other persons, natural or artificial. The question whether such a corporation as the respondent, in consequence of any immunity inherent in its municipal character, is exempt from those liabilities for malfeasance for which individuals and private corporations would be liable in a civil action by the party injured, is no longer an open one. The acts of the character of those now in question involved in the necessary performance of a duty prescribed by a municipal ordinance are strictly ministerial, and when performed by an officer or agent by direction and for the benefit of the corporation, no exemption from liability by the principal can be interposed, when from negligence or wilfulness they are so performed as to produce unnecessary damage to other parties."

In *Thayer* v. *City of Boston*, 19 Pick., 511, the officers of the defendant city had obstructed the plaintiff's access to the street by the erection therein of stalls along the front of his premises; for this he brought his action on the case against the city; the latter pressed upon the court the argument that, if the officers of the corporation within their respective spheres act lawfully and within the scope of their authority, their acts must be deemed justifiable, and nobody is liable for damages, and if any individual sustains loss by the exercise of such lawful authority it is *damnum absque injuriâ*. But if they do not act within the scope of their authority, they act in the manner which the corporation have not authorized, and in that case the officers are personally responsible for such unlawful and unauthorized acts. Shaw, C. J., said: "But the court are of opinion that this argument, if pressed to all its consequences and made the foundation of an inflexible

practical rule, would often lead to very unjust results. There is a large class of cases in which the rights both of the public and of individuals may be deeply involved, in which it cannot be known at the time the act is done whether it is lawful or not. The event of a legal inquiry in a court of justice may show that it was unlawful. Still, if it was not known and understood to be unlawful at the time, if it was an act done by the officers having competent authority, either by express vote of the city government, or by the nature of the duties and functions with which they are charged by their offices, to act upon the general subject matter, and especially if the act was done with an honest view to obtain for the public some lawful benefit or advantage, reason and justice obviously require that the city in its corporate capacity should be liable to make good the damage sustained by an individual in consequence of the acts thus done. It would be equally injurious to the individual sustaining damage, and to the agents and persons employed by the city government, to leave the party injured no means of redress except against agents employed, and by what at the time appeared to be competent authority, to do the acts complained of, but which are proved to be unauthorized by law. And it may be added, that it would be injurious to the city itself in its corporate capacity, by paralyzing the energies of those charged with the duty of taking care of its most important rights, inasmuch as all agents, officers and subordinate persons might well refuse to act under the direction of its government in all cases where the act should be merely complained of and resisted by any individual as unlawful, on whatever weak pretence; and conformably to the principle relied on, no obligation of indemnity could avail them. The court are therefore of opinion that the city of Boston may be liable in an action on the case, where acts are done by its authority which would warrant a like action against an individual, provided such act is done by the authority and order of the city government, or of those branches of the city government invested with jurisdiction to act for the corporation upon the subject to which the particular act relates, or where, after the act has been done, it has

been ratified by the corporation, by any similar act of its officers." This decision received the approval of the Supreme Court of the United States in *Barnes* v. *District of Columbia*, 1 Otto, 540.

In *Hildreth* v. *City of Lowell*, 11 Gray, 349, the officers of the city entered the plaintiff's close for the purpose of constructing a sewer, without giving to him such previous notice as the city ordinances required; for this act he sued the city. The court said: "There is no doubt that an action of tort may be maintained against a town or city to recover damages for a trespass committed by any of its agents or officers acting under its authority or in pursuance of directions given them, upon the property or estate of another party;" and cites *Thayer* v. *City of Boston* approvingly.

In *Hawks* v. *Charlemont*, 107 Mass., 414, the selectmen entered the close of the plaintiff and took stone for repairing a bridge, and thereby exposed the land to be washed and damaged by a river. The court said: "It is manifest that the acts of the selectmen were tortious, and if they were done by the authority of the town an action of tort will lie against the town. Where officers of a town acting as its agents do a tortious act with an honest view to obtain for the public some lawful benefit or advantage, reason and justice require that the town in its corporate capacity should be liable to make good the damage sustained by an individual in consequence of the acts thus done."

In the case of *Lee* v. *Village of Sandy Hill*, 40 N. York, 442, the charter of the village provided that its officers should be five trustees, and that such trustees should be commissioners of highways of the village, and have the same powers and be subject to the same duties as to the roads of the village as commissioners of highways in towns. Under a written resolution and order of such trustees the overseer of highways wrongfully entered upon the land of the plaintiff and moved back a fence erected by him in front of his lot, the trustees in making the order acting in good faith, erroneously supposing the plaintiff's fence was an encroachment upon the street, and that they were proceeding in pursuance of the authority

conferred upon them by the charter.   The court held that to render a municipal corporation liable for the tortious acts of their servants and officers, it is enough that it should appear, either that they were expressly authorized by such corporation, or that they were done *bonâ fide* in pursuance of a general authority to act for the corporation on the subject in relation to which they were performed; and that the plaintiff could maintain trespass against the village for such removal, whether the trustees were to be regarded as mere agents of the corporation or it was deemed an act of the corporation itself.

In *Buffalo & Hamburgh Turnpike Co.* v. *City of Buffalo,* 58 N. York, 639, the city in making certain changes in one of its highways injured a bridge belonging to the plaintiff; the court held that a municipal corporation is liable for the tortious acts of its agent, where it appears that the agent was expressly authorized to do the acts, or that they were done in good faith, in pursuance of a general authority to act for the corporation on the subject to which they relate.

In *Sheldon* v. *Kalamazoo*, 24 Mich., 383, the president and trustees of the village directed the committee on streets to notify the plaintiff that his front fence encroached upon the highway and that he must remove it; this he refused to do, and the marshal removed it upon the order of the committee. The court below refused to hear evidence that the plaintiff's fence stood upon the line, for the reason that the president and trustees acted in the capacity of public officers and not municipal agents, and that the corporation is not liable for their acts in the premises.   In granting a new trial the Supreme Court said: "The doctrine is entirely untenable that there can be no municipal liability for unlawful acts done by municipal authorities to the prejudice of private persons.   In this respect public corporations are as distinctly legal persons as private corporations."

In *Crossett* v. *City of Janesville*, 28 Wisconsin, 421, the city entered upon the plaintiff's lot and began to construct a highway over it without compliance with the terms of its charter, which provided that no street should be graded with-

out a recommendation in writing signed by a majority of the resident owners of property situated thereon. The court held that the city was liable to the plaintiff for injury to his lot from the grading of a street by order of the council without such a recommendation.

In *Soulard* v. *City of St. Louis*, 36 Missouri, 546, the corporation opened a street through the land of the plaintiff without first having the land condemned and damages assessed in the manner provided by its charter. The court said: "Accordingly it has been held that a municipal corporation will be liable where acts are done by its authority which would warrant a like action against an individual, provided such act is done by the authority and order of the city government invested with jurisdiction to act for the corporation upon the subject to which the particular act relates, or where after the act has been done it has been ratified by the corporation."

In *Allen* v. *City of Decatur*, 23 Illinois, 332, the city council by resolution directed the city supervisor to open a street across the plaintiff's lot without authority of law. The court said: "We shall in this opinion devote our attention to the principal question which has been argued in the case, which is, whether a municipal corporation can be sued in an action of trespass for acts done in obedience to an order of the corporation. The law is now so well settled that it is nowhere controverted that such corporations may be sued in case for tortious acts done under the instructions of such corporations."

In *Woodcock* v. *City of Calais*, 66 Maine, 234, the city government of Calais passed an order "that the street commissioner be directed to cause all fences now on the public streets to be removed." The street commissioner employed a surveyor to run a line between the plaintiff's land and the street. The line, as run, proved to be outside of the street limits and upon the plaintiff's land. The commissioner, believing the line to be correctly ascertained, moved back the plaintiff's fence in accordance therewith, removed from the plaintiff's land earth and rocks, and built a side-walk thereon. The court, in holding that the principle of *respondeat superior* applied, and that the city was liable to the plaintiff in trespass for the damages, said that the fact that the street commis-

Weed *v.* Borough of Greenwich.

sioner "was expressly directed by the city government to cause all fences on the street to be removed, and that while attempting to follow these directions he committed the trespass which is the foundation of this action, withdraws this case from the application of the principle applicable to cases of public officers. For, while he was a public officer, and had lawful authority to act in the premises without any directions from the city, still the city was responsible for the safe condition of the streets, and chose by positive, formal vote to direct the commissioner. Whether he was obliged to follow the direction or not is immaterial. He did act, and in his action he became *quoad hoc* the city's agent; and we are of the opinion that the superior must respond."

In *Cumberland & Oxford Canal Co.* v. *City of Portland,* 62 Maine, 504, which was an action on the case for obstructing the plaintiff's canal, the court said that "the declaration avers, and therefore the demurrer admits, that the city of Portland did the acts complained of. Those acts are *primâ facie* acts of trespass. No justification or excuse being shown, the plaintiffs are entitled to judgment."

In *Inman* v. *Tripp, Treasurer of the City of Providence,* 11 R. Island, 520, an action upon the case for discharging surface water upon the land of the plaintiff, the court, in holding that "the doctrine that a municipality cannot be held liable for the consequences of an act which is legally authorized or is required to perform, will not justify an invasion of private property, even if the invasion is only consequential," said:—
"The plaintiff's property has been invaded, and the question is whether he is entitled to any remedy against the city for the invasion. There are cases which hold or seem to hold that no action lies against the city even for such an injury. The ground of these decisions is that a city cannot be answerable at law for the consequences of an act which it is legally authorized or required to perform. But we think this doctrine, the abstract truth of which cannot well be gainsaid, is misapplied when it is held to sanction an invasion of private property, even though the invasion is only consequential."

In *Ashley* v. *Port Huron,* 35 Mich., 296, Cooley, C. J., says, that "it is very manifest from this reference to authori-

ties that they recognize in municipal corporations no exemption from responsibility where the injury an individual has received is a direct injury accomplished by a corporate act which is in the nature of a trespass upon him. The right of an individual to the occupation and enjoyment of his premises is exclusive, and the public authorities have no more liberty to trespass upon it than has a private individual. If the corporation send people with picks and spades to cut a street through it without first acquiring the right of way, it is liable for a tort."

In *Rowe* v. *City of Portsmouth*, 56 N. Hamp., 291, the court said that the question whether municipal corporations in this country, and corporations in England having some of the powers and charged with some of the duties usually exercised by municipal corporations here, are liable for negligence, carelessness or misfeasance, both in the performance of their legal duties and the doing of voluntary acts within the scope of their authority, has been much considered by the courts on both sides of the Atlantic; and the decided weight of modern authority is, that in this respect they stand like private individuals or corporations."

In *City of Chicago* v. *McGraw*, 75 Illinois, 566, the court says: "That an action of trespass lies, in a proper case, against a municipal corporation, is not an open question in this court. * * But to render it liable in any case for torts committed by persons claiming to act for it, or by its authority, it must appear that they were expressly authorized to do the acts by the municipal government, or that they were done *bonâ fide* in pursuance of a general authority to act for the municipality on the subject to which they relate; or that, in either case, the act was adopted and ratified by the corporation. *Thayer* v. *City of Boston*, 19 Met., 571."

There is error in the judgment complained of.

The Superior Court should render judgment for the plaintiff to recover of the defendants the sum of one hundred dollars damages and his costs.

In this opinion CARPENTER and GRANGER, Js., concurred; PARK, C. J., and HOVEY, J., dissented.