LAURA REQUA, as administratrix, etc., Respondent v. THE CITY OF ROCHESTER, Appellant.

A municipal charter provided, that "whenever any street or alley shall have been opened to, or used as such by, the public, for the period of five years, the same shall thereby become a street or alley for all purposes." *Ipso facto*, by this enactment, as an acceptance, an alley so used, which had been open to the public use for over twenty years and the private right in it given to the public, became one of the public ways of the city. No formal act of acceptance, other than the acceptance of this charter containing such section, was needed.

An excavation was made in a street, by the authorities of the city of Rochester, so as to cause an abrupt descent from a public alley to the street, and render egress from the alley inconvenient, and not free from danger.—*Held*, that the city was bound to remedy this evil. The power conferred upon them to superintend the streets, imposed a duty to exercise the power in necessary cases.

If, in such case, the excavation has been bridged by a volunteer, and the

city allows the bridge to remain there for years, it makes it its own and must keep it in repair.

Where the injury to the plaintiff at the bridge was caused by the removal of planks from it, by unknown persons,—*Held*, in his action against the city to recover for such injuries, that no actual notice to the city of the defect was necessary, when ample time had elapsed after the removal, to render it notorious.

Sufficient time, however, must elapse in such cases, to give constructive notice to the authorities, or they must have actual notice.

A general exception to all the charge so far as it did not conform to several written requests previously handed up is unavailing.

(Argued February 16, 1871, and decided March 21, 1871.)

Appeal from the judgment of the late General Term of the Supreme Court, in the Seventh district, ordered upon a verdict for the plaintiff, at the Monroe circuit.

This was an action to recover damages for the negligence of the defendant, in permitting a bridge to continue out of repair. The bridge was situated opposite the head of an alley which led into Clark street, in Rochester, and was within the line of the street. This alley was in a thickly-populated part of the city, and was several feet higher than the street, and gradually sloped down to it; a gutter was formed in Clark street, by cutting down abruptly the ground near the intersection of the alley with the street, which gutter was covered by the bridge in question. The plaintiff drove along the alley, and in crossing the bridge, one of the wheels of his wagon went down into an opening in the bridge, caused by the removal of a plank or planks, and he was thrown to the ground, and sustained severe injuries.

The bridge was not built by the city authorities, but placed there by some volunteer, some years before the accident. It did not appear by whom the missing plank had been removed, but that it had been gone two or three weeks.

The circumstances as to the dedication of the alley are sufficiently stated in the opinion.

The jury rendered a verdict for the plaintiff for $500.

*E. A. Raymond*, for the appellant. Having a discretionary power as to improvements in public streets, the city is not

liable for injuries incident to the exercise of such discretion. (*Matter of Furman street*, 17 Wend., 649; *Graves* v. *Otis*, 2 Hill, 466; *Wilson* v. *Mayor of New York*, 1 Denio, 595; *Radcliff* v. *Mayor of Brooklyn*, 4 N. Y., 195; *Waddell* v. *Mayor of New York*, 8 Barb., 95; *Smith* v. *Corporation of Washington*, 20 How. U. S., 135; *Fish* v. *Mayor of Rochester*, 6 Paige, 268.) That knowledge or notice to one alderman was not notice to the corporation. (*Fulton Bank* v. *N. Y. & S. Canal Co.*, 4 Paige, 127; *Farnell Foundry* v. *Dart*, 26 Conn., 376; *Olcott* v. *Tioga R. R. Co.*, 27 N. Y., 546; *Bank* v. *Davis*, 2 Hill, 461, 463.)

*George E. Ripsom*, for the respondent.

FOLGER, J. We have no difficulty in holding, with the learned judge who presided at the circuit, that no such state of facts had been shown, when the plaintiff rested, as would warrant him in taking from the jury, and disposing as a question of law, of the defendant's proposition that contributory negligence was imputable to the plaintiff. The only circumstance which would at all have justified that course was, that the plaintiff had been shown to have imperfect eyesight. But it was not so imperfect but that he could and did drive through other streets of the city, with a reasonable assurance of safety. He was, then, within the rule laid down in *Davenport* v. *Ruckman* (37 N. Y., 568).

We are of the opinion, too, that the alley in question was a public alley, and that the city was so far bound to keep it in repair as that access to Clark street from it should not be dangerous to the individual. The proof was ample that more than twenty years before this accident, originated a dedication of this alley to the public, and that it was opened to the public use, and was in fact used by the public.

All exclusive private right in it was offered to the public. It was a public alley by dedication, except so far as that there was no formal act of acceptance of it by the public authorities, and it may be, not enough to show a clear intent on the part of

the authorities to accept and enjoy, as such, the easement proposed to be dedicated. (See *Holdane* v. *Trustee, etc.*, 21 N. Y., 474; *Bissell* v. *N. Y. Central R. R.*, 23 id., 64.) But the inchoate dedication had never been rescinded.

In this state of things, the amended charter of the defendants, given and accepted in 1861, came in. By its 156th section it is provided that "whenever any street, alley or lane shall have been opened to or used as such by the public for the period of five years, the same shall thereby become a street, alley or lane for all purposes, and the said common council shall have the same authority and jurisdiction over, and right and interest in the same, as they have by law over the streets, alleys or lanes laid out by it." It is evident that this section was designed to cover the case of just such an alley as this; an alley which had been opened to the public, or used by it, for five years, though the public authorities had not with definiteness indicated an extension of authority and jurisdiction over it.

As this alley had been open to the public use for over twenty years, surrendered by the owners of the fee, the private right in it as property given to the public, and so far, gone from the individual, it came within the operation of this section, and *ipso facto*, by the enactment and acceptance of this amended charter, this alley, as early as 1861, became one of the public ways of the city. No formal act of acceptance other than the acceptance of this charter with this section in it, was needed.

We have been referred to *McMannis* v. *Butler* (49 Barb., 179). We do not conflict with the decision in that case, in holding that section 156 makes this alley, for the purposes of this case, a public way. That decision holds that this section cannot retroact so as to affect private vested rights. There is no such question before us. All exclusive private rights in this alley have ceased. For more than twenty years it had been marked out and proffered for public use, and been more or less used by the public; so that by the provisions of the act of 1861 this alley was, in 1864, the property of the city

for public use, and in its care and custody, without contravening any exclusive private or vested right. It may well be, that section 156 cannot have a retroactive effect, so as to operate adversely upon private vested rights. But where public rights alone are concerned, where the private right to the fee has been surrendered by dedication to the public, where general use has, for more than twenty years, recognized and adopted the gift, though no act of the public authorities has formally accepted the donation, this section does move, instead of such act of formal acceptance, and does by its force, declare and make the street, alley, or lane, the property of the city, in trust for the public. The section comes in place of the usual formal act of acceptance by the public authorities, to receive and adopt for legalized public use, and place under public care and control, that which has been by the private owner devoted to the public. It may not affect a private right, if such exists, but it may make good a gift thereof.

The city had then, before this accident, taken control of this alley, and of Clark street into which it ran. The city was then under the duty not only of not interrupting or making unsafe the passage of the citizen from this alley into this street, but was bound so to shape any improvement of Clark street, as that people could continue to use the alley. By the charter of the defendant, its common council were the commissioners of highways for the city, and as such, had the care and superintendence of the streets and alleys therein, and were charged with the duty of their preservation and repair. (Laws of 1861, p. 317, § 155.)

They were the agents of the city, and through them the city was bound to exert the power conferred, so that no harm should come to the individual. (*Conrad* v. *Village of Ithaca,* 16 N. Y., 158, and note.)

And though there may have been nothing in the condition of the alley itself calling for the action of the common council, or which, neglected by it, would render the city liable, it is certain that, having assumed the active control of Clark street, and by grading and excavation upon it, by cutting

down at the mouth of this alley so as to make an abrupt descent, having rendered the egress from the alley on to that street so far inconvenient as to be not free from danger, the city was bound to amend that evil. This was not a matter of discretion; the power given was not merely permissive. The power conferred imposed, a duty to exercise the power, in a case of need. This would be so, were not the language of the charter mandatory. (*Hutson* v. *The Mayor, etc.*, 5 Seld., 163; Laws of 1861, p. 291, § 84; id., p. 317, § 155.) Besides, it was something which was created by the act of the city, in the grading down of Clark street; so that the alley, being also under its care, the duty of remedying the immediate consequence of its act was incumbent upon it. The readiest remedy, perhaps, was a bridge over the gutter at the edge of the sidewalk. Though there is not positive proof to that effect, there is testimony from which the jury might have inferred that this method was adopted and the bridge put there by the city. If so, it was, beyond doubt, bound to keep it in repair, and was liable for an injury resulting from a neglect to do so. But if a volunteer instead of the city had, seeing the need of it, put the bridge there; after it was placed there, and by the city allowed to remain for years, did it not adopt it and make it its own? Permitting it to remain, as a usual and suitable means of overcoming the difficulty it had caused, did it not invite the citizen to use it, and did not the city thus come under the duty that he should use it with safety? In our judgment it did. (*State* v. *Crompton*, 2 N. H., 513; Angell on Highways, § 257; *Heacock* v. *Sherman*, 14 Wend., 58; *Dygert* v. *Schenck*, 23 id., 446, 449–451.) So the bridge, whether originally placed there by the corporate authority, or by one volunteering to do that which that authority ought to have done, became the property of the city. In the first instance, plainly enough. In the second instance, by acquiescence in its being laid there, by adopting it, by receiving it as a gift, in kind as it would take and accept a street by dedication of the owner of the land. And in the one case as in the other, being

bound after acceptance to keep it in condition for safe passage over it. (*Batty* v. *Duxbury*, 24 Vt., 155 ; Angell on Highways, § 267.)

The defect in this bridge, through which the plaintiff received his injury, was not one resulting from the wear and tear of ordinary use, or from natural decay. It seems to have been the removal of one or two planks from it by the ·willful act of some person unknown. The point was made on this state of facts, that the city was not liable for any resulting injury to an individual, unless there was shown to have been express notice to the city of the existence of the defect. We cannot so hold. It has been held in this court. (*Griffin* v. *The Mayor*, 5 Seld., 456), that where injury occurred to an individual, in a street of a municipality, by the placing in it, by persons not in municipal employment, of obstructions, in violation of an ordinance forbidding such act, that the corporation was not liable when notice of such obstruction was not shown to have been received by its officers. A distinction seems to have been taken between the case of a street out of repair by the act of a third party, and an obstruction placed in the street by such party in violation of an ordinance. For *Hutson* v. *The Mayor*, etc. (*supra*), was cited with approval, which was a case where an excavation had been made in a public street by a third party, and the defendants had neglected to have it filled again. It is true that such excavation had been begun with the assent of the defendant, and so it may have been considered that knowledge of the excavation in the defendant could be presumed, or that there was a duty on it to watch what was done by its assent, so that it should not be left unfinished and dangerous.

We should not hold that a municipal corporation is liable for an injury resulting from a defect in a public way, when such defect is from the willful act of some person without authority, and the injury has followed close upon the unauthorized act. But if between the doing of the willful act, and the befalling of the injury, there has elapsed such length of time as that the defect in the way has become known and notori-

ous, and there has been full opportunity for the municipality, through its agents charged with that duty, to learn the existence of the defect, we are of the opinion that it is as much the neglect of the municipality not to have amended the defective way, as though the way had fallen from repair by ordinary wear and tear, or other natural cause. Should there be a violent rainstorm in the night-time, and by the choking of sewers, theretofore and under reasonably anticipated circumstances sufficient to carry off the fallen water, a torrent be turned across a street, and it washed out, to such state as that injury occurred to some one abroad on his travel, before the working hours had come again in which the damage could be repaired or warned against, we should not hold a municipality liable for that injury. (*State* v. *Freyburg*, 3 Shepley, 405; and see *The People* v. *H. & C. T. R. Co.*, 23 Wend., 254.)

But just as it would be liable for an injury happening thus, after a reasonable time had elapsed, in which it could be presumed to have become aware of the peril in its public streets, so in our view, it is liable, if after the willful act of one not in its employment has made a place of danger in its highway, a lapse of time has run long enough in the sound judgment of a tribunal, for it to have learned of the danger, and to have removed it. (*Reed* v. *Northfield*, 13 Pick., 94–98.) Express notice of the existence of the nuisance may be brought home to it; or if the defect be so notorious as to be observable by all, this comes in the place of express notice. (*Mayor, etc.*, v. *Sheffield*, 4 Wall., 189, 195, 196.)

In looking into the facts in this case, it is plain to us, that the defect in this bridge had existed for some days before the accident, and was known to many of the inhabitants of the city. The jury have found that the existence of it, had been communicated to one of the members of the common council. Though this would not, under all circumstances, be proof of an express notice to the city of the defect in the bridge, it was proof of the notoriety of it.

We think that there is sufficient to bring the case within the alternative above put, and that it was so notorious, as to be observable by all.

We are therefore of the opinion, that the judgment in this action must be affirmed, unless the appellant has shown us such errors occurring on the trial, as demand its reversal.

The resolution of the common council, proven from the minutes of the proceedings of that body, were properly received in evidence. They were the official acts of the very agents of the defendant who had the care of this alley and of the streets with which it connected. And they were acts in relation to one of those streets, recognizing its existence, its public use, adopting it as a street, and ordering the very work which caused the need of this bridge, and was the remote cause of the accident.

At the close of the proofs, the defendant's counsel submitted to the court, ten propositions on which he requested the court to charge the jury. They were in writing, and submitted before the charge was made. Without refusal to conform to the requests made, the court proceeded in its charge to the jury. Some of these propositions were substantially adopted by the learned judge. At the close of the charge, the defendant's counsel excepted to it in all the particulars specified in those written requests, "so far as the judge had not charged as requested." Such an exception is of no avail. It does not point out in what the counsel conceives, that the court has erred. It gives no aid for the correction of any error, into which a judge has fallen. (*Walsh* v. *Kelly*, 40 N. Y., 556.)

The exceptions specifically taken to the charge, and relied upon here, are all answered by the views of the case which we have above expressed.

The exception "to each and every proposition in the second charge of the court to the jury," was too general in form. It did not specify and point out to the court in what it was deemed by counsel to have erred. Here is a charge of nearly eight printed folios, of several propositions, some of which

are clearly correct, and are not questioned by counsel on argument in this court. But by his general exception he left it to the judge to review what he had said to the jury, and without specific indication to discover in what there was error. Such a mode of trying a cause is not just to the court or to the parties, or to abstract right, and it is a salutary rule which declares that an exception thus taken will not be considered in a court of review. (*Walsh* v. *Kelly*, *supra*, and cases there cited.)

There may be instances in which its application will be harsh. But in general, it is beneficent. We feel the less hesitation in applying it in this case, because, though the charge in one particular may be open to criticism, it was, in other respects, more favorable to the defendant than could have been demanded, and because we are convinced that the law and the facts of the case sustain the general verdict of the jury.

The judgment of the court below must be affirmed, with costs to the respondent.

All concur, except ALLEN and ANDREWS, JJ., who, not having heard the argument, took no part.

Judgment affirmed, with costs to the respondent.