Smith, P. J.
Action to recover for a personal injury alleged to have been sustained by plaintiff in consequence of the defendant’s negligence in not repairing or keeping its sidewalk in a safe and propér condition.
The defendant is a municipal corporation formed under the general act for the incorporation of villages. Laws 1870, chapter 291.
The injury occurred on the evening of March 1, 1883, while the plaintiff was traveling along the sidewalk on East Eiver street in said village. The walk, which was of plank, had been displaced by one Fish, the owner of the adjoining premises to enable him to change the location of some shade trees owned by him.
The nonsuit was ordered upon the sole ground that there was no proof of notice to the defendant of the defective condition of the sidewalk before the injury occurred.
Express notice was not shown and the only question is whether the circumstances of the case developed by the evidence are such as to justify the inference of what the law recognizes as constructive notice. It has been held that after a street has been out of repair, so that the defect has become known and notorious to those traveling upon it, and there has been full opportunity for the municipality, through *120 its agents charged with that duty, to learn of its existence and repair it, the law imputes to it notice, and charges it with negligence. Todd v. City of Troy, 61 N. Y., 506, and cases cited by Earl, J., p. 509. The same rule applies to sidewalks, where the municipality is charged with the duty of keeping them in good order. Among the duties imposed upon the defendant by the act under which it is incorporated, are: “to pave, plank or flag roads, streets, crosswalks or sidewalks ” (Laws 1870, chap. 291, title 3, § 3, subd. 25); “to prevent incumbering the streets, squares, sidewalks, etc., with any material whatever (Id., subd. 6); to provide for keeping the sidewalks free from snow, ice, etc., dirt and other obstructions (Id., subd. 16); and to compel the owners and occupants of lands or lots in front of and adjoining which a sidewalk is to be made or repaired, to make such improvement upon the sidewalk in front of such land or lot, and in case the owners or occupants neglect, then to cause such improvement to be made at their expense (Id., §4).”
It appears from the evidence that the sidewalk was laid by Fish the summer before the accident, and that it was placed inside of certain shade trees then growing in front of his premises, with instructions to move the trees when they could be moved without being killed. In February following, Fish set about moving the trees. There were four of them, four inches or more in diameter. Excavations some two feet deep were made by digging around the trees, in order to remove them, and also in digging new holes for the trees to be placed in, and the earth taken out was thrown up in piles. For the purpose of doing the work a section of the sidewalk was thrown around out of place, so that a space was left in the sidewalk, or, as one of the witnesses expressed it, “a jog of from eight to twelve inches right down on to the ground.” It was at that point that the plaintiff fell in the night (no guards or light having been placed there), and received his injury. The work was done by Foltz, who was employed by Fish.
Fish testified that Palmer, one of the trustees of the village, directed him about moving his walk, and showed him the stakes, the street line, the distance to move the walk, and where to put the trees. He also testified that Mr. Heller, who was shown to be the president of the village, gave similar directions, and was there at different times, and during the first two days that the work was going on.
Fish testified that the work was going on for about a week, according to his recollection. Foltz said the work continued four or five days, and that when he heard of the accident the job was within a day or two of being finished; .it was past the middle of the job.
*121 It was also testified that Heller lived on the same street in which the work was done, ten or twenty rods from the place, and there was nothing to prevent seeing the piles of dirt from Heller’s house. Also, that the place of business of Palmer was on the corner of East River and Main streets, in sight of the work, and about forty rods from Fish’s house.
It was also testified that Mr. Stebbins was one of the trustees of the village, and that in going from his residence to his place of business, he passed along Main street, by East River street, and in view of the walk in question.
By the act, the board of trustees are declared to be commissioners of highways of the village, (Title 7, sec. 1), and the president of the village is made the president of such board, (Title 5, sec. 1; title 2, sec. 2) and in our opinion is to be regarded as a member of the board, or at any rate, as holding such a relation to it and to the village, as that notice to him would be sufficient to charge the defendant with notice.
In view of the circumstances disclosed by the evidence, we think it cannot be said that the plaintiff failed to make even prima facie proof of negligence, and that it became a question for the jury whether one or more members of the board of trustees did not know, or in the exercise of a reasonable degree of diligence and care, ought not to have known of the defective condition of the sidewalk, in season to have remedied the defect, or to have prevented the injury of which the plaintiff complains by causing a light or proper guards to be placed at the point of danger.
The evidence as it stands, shows very clearly that the interference with, and removal of the sidewalk was begun with the assent of the village authorities, and so (as has been said in a like case) it may have been considered that knowledge of the defect in the defendant could be presumed, or that there was a duty on it to watch what was done by its assent, so that is should not be left unfinished and dangerous. (Per Folger, J., in Requa v. The City of Rochester, 45 N. Y., 135.)
The case of McDermott v. The City of Kingston (19 Hun 198), cited by respondent’s counsel does not apply, as is that case there was no proof of notice, express <or constructive.
The judgment should be reversed and a new trial ordered^ costs to abide event.
Barker, Haight and Bradley, JJ., concur.