DWIGHT and CHILDS, JJ., concurred.

Judgment reversed, new trial granted before another referee, with costs of this appeal to abide the final award of costs.

---

.IN THE MATTER OF THE WIDENING OF HAND STREET, IN THE CITY OF ROCHESTER.

*Eminent domain — the use of vacant lots as a passage-way by the public is not proof of a dedication by the owner — payment of taxes as evidence to disprove a dedication — charter of Rochester, chapter 14 of 1880 — power of the court to modify an award.*

Proceedings were instituted under the provisions of its charter by the municipal authorities of the city of Rochester, to widen Hand street, in the eastern portion thereof, where it intersects with Clinton street. Among the parcels of land intended to be taken for that purpose was a lot known as No. 28, which fronted on Clinton street, and was bounded on the north by Hand street, Hand street being an alley sixteen feet wide.

Said Lot No. 28 had been for more than twenty-two years last past, and was, at the time of the proceedings, used by the public of the city of Rochester by

passing over and across the same as a part of Hand street. No proof of any affirmative act on the part of the owners, indicating an intention on their part to throw open this parcel of land to the use of the public for street purposes, was given before the commissioners appointed to appraise the damages.

This lot was owned by John B. Parmlee or his heirs, or by one George S. Riley; neither Parmlee nor his heirs, nor Riley, having been in the actual possession or control of the premises for many years. For more than thirty years Riley had claimed an interest in the lot, and had paid the city taxes, which were levied upon it as a separate and distinct parcel of land.

The report of the majority of the commissioners, on the ground that the land had been dedicated to the public use, awarded to the heirs of John B. Parmlee the sum of one dollar as damages for the taking of the lot. The Special Term upon an appeal to it modified this by awarding to the owners and claimants of the lot the sum of $1,800 as damages, and directing that such award be deposited in a savings bank, subject to the order of the County Court of Monroe county, and that the city pay to the appellant Riley his costs on the appeal. Upon an appeal from this order:

*Held*, that the claim made by the city that the owner had dedicated this lot to the use of the public as a public street was not sustained by the evidence.

That it was not unusual that, in the vicinity of cities and villages, tracks of land lie unfenced, open to the common use for many years, and that well-defined ways of passage are gradually formed across them, but without other evidence of an intention on the part of the owners to dedicate the same to the public use, it would not be held that such use by the public, without protest on the part of the owner, was evidence of an intention on his part to dedicate it to the public use or surrender the right to inclose and occupy the same as private property.

The city charter provided that "whenever any street, alley or lane, shall have been opened to and used as such by the public for the period of five years, the same shall thereby become a public street, alley or lane for all purposes, and the common council and the executive board, respectively, shall have the same authority and jurisdiction over the right and interest in the same as they have by law over the other streets, alleys or lanes and highways of the city."

*Held*, that this section did not apply to a case where the owner had not, by some act on his part, dedicated the premises to public use.

*Strong* v. *City of Brooklyn* (68 N. Y., 1) followed.

That the undisputed fact that during the period mentioned by the witness the city levied taxes upon this lot as a separate and distinct parcel of land, and that the same were paid by the respondent Riley, would ordinarily be received as evidence that the municipal authorities did not regard the use by the public, whatever may have been its nature and character, as being with the consent of the owner or as indicating an intention on his part to abandon the right to inclose and resume the use of the property and exclude the public therefrom.

That as Mr. Riley, who appealed from the majority report of the commissioners, was heard before them and presented proofs showing that he had the control and management of the property, paid the taxes thereon and had an equitable interest in the premises, these facts and circumstances made him a proper party to the proceedings and gave him a right to be heard upon the question of compensation to be awarded for taking the land for public purposes.

That a claim, made by the appellant that the Special Term had no power to modify the report by increasing the award of damages above the amount awarded by the majority of the commissioners, could not be sustained.

That as power was conferred upon that court by the city charter to modify the report it was authorized to review the assessment of damages, and if dissatisfied with the award to correct the same by increasing or diminishing the same, being guided in such determination by the evidence presented before the commissioners bearing on the question of damages.

APPEAL by the city of Rochester from an order of the Monroe Special Term, entered in the office of the clerk of the county of Monroe on September 18, 1888, modifying the report of the majority of the commissioners herein, which had been confirmed by the common council of the city of Rochester, by substituting in place of the same the report of the minority of the said commissioners, as to the value of Lot 28 of Riley's subdivision on North Clinton street, taken by the exercise of the right of eminent domain in these proceedings.

The municipal authorities for the city of Rochester, in pursuance of the provisions of its charter, instituted proceedings to widen Hand street along the eastern portion thereof, where it intersects with Clinton street. The papers describe several pieces and parcels of land intended to be taken for that purpose, and among them the parcel known as lot No. 28, which is described as follows: " Commencing at the north-west corner of the premises first described; thence northerly six and seventy-five one-hundredths feet; thence easterly about two hundred and thirty-five feet to the west line of Clinton street; thence southerly along the west line of Clinton street about thirty feet to the line of Christianna Yackle; thence westerly about two hundred and thirty-five feet to the place of beginning, known as lot No. 28, Riley's subdivision."

Three commissioners were appointed to award damages to the owners of the premises described. Two of the commissioners joined in a report in which they awarded damages to the heirs of John B. Parmlee, the sum of one dollar, and stated as a fact in their report that the premises had been for more than twenty-two years last past, and now are, used by the public of the city of Rochester for public highway purposes and uses, and in hostility to any right of said Parmlee, and that such uses had been open, notorious and continuous by and on the part of said public. The other commissioner

made a separate report, in which he dissented from the conclusion of his associates and found, as a fact, that the record title to the premises in question were in the heirs of the said Parmlee, whose names and places of residence were unknown, but that George S. Riley, of Rochester, claimed to be the owner in fee of the premises, by virtue of a defeasance, executed by Parmlee, the legal effect of which it is claimed constituted the deed from Riley to Parmlee, a mortgage, and that he was unable to concur with the other commissioners in their finding that the property had been used for highway purposes for twenty-two years, and that such use had been notorious and continuous by and on the part of the public, and that he was in favor of awarding to the owner of the premises $1,800 as damages, and recommended that the money be deposited in the Monroe County Savings Bank subject to the order of the County Court. The common council confirmed the majority report and Riley appealed from the report of the commissioners to the Supreme Court, and the appeal was heard at the Monroe County Special Term, where the report was modified by awarding to the owner and claimants the sum of $1,800 as damages, and directing that such award, when paid, be deposited in the Monroe County Savings Bank, subject to the order of the County Court of Monroe county, and that the city of Rochester pay to the appellant, George S. Riley, his costs on the appeal. From the last-named order the city took an appeal to the General Term.

*Quincey Van Voorhis*, for the city of Rochester, appellant.

*George F. Youmans*, for George S. Riley, respondent.

BARKER, P. J.:

At the time these proceedings were initiated, as appears by the proofs, the title to the land in question was in the heirs of J. B. Parmlee, deceased. Neither he nor they have been in the actual possession or control of the premises for many years. For more than thirty years George S. Riley, the respondent, has claimed an interest in the *locus in quo*. As early as in the year 1850 the eastern portion of Hand street, which runs east and west, was open and extended so as to intersect with Clinton street. This section of

Hand street, after it was opened, was commonly called an alley, and was only sixteen feet wide.

It is conceded by the parties to this appeal that thereafter by the virtue of the proceedings then had it was a public streeet and used by the public as such. It is unimportant to inquire whether this street was opened by the action of the owners of the land dedicating the same to the public as a street, or by proceedings instituted by the municipal authorities, or by concert of action on the part of both. It is also undisputed that after the public commenced to use the alley as a public street the premises in question, then known as lot No. 28, fronting on Clinton street thirty feet, with a depth of 235 feet, and bounded on the north by the said alley, was owned by either the said Parmlee or the said Riley. The adjoining lot to the south of lot 28 on Clinton street, was used and occupied by other parties before the public used any part of lot 28 for the purposes of a street. It thus distinctly appears that after Hand street was extended so as to intersect with Clinton street, the premises in question known as lot 28 on the west side of Clinton street, was a separate and distinct parcel of land without the least uncertainty or controversy as to the true location of its street boundaries on Clinton and Hand streets. As there is no proof indicating that any other person than Mr. Riley had the control and management of this lot since the extension of Hand street, he will be mentioned, for convenience, as the owner. The claim made by the city that the owner dedicated this entire lot to the use of the public as a public street, is not, in our opinion, sustained by the evidence. There is not the least proof of any affirmative act on the part of the owners indicating an intention on his part to throw open this parcel of land to the use of the public for street purposes. The owner's intention must be shown by some affirmative act on his part, and merely permitting his land to remain open, unfenced against intruders, or without asserting the right of exclusive possession, will not be taken for such an act. (*Strong* v. *The City of Brooklyn*, 68 N. Y., 1.) The use which the public have made of this lot by passing over and across the same as a part of Hand street does not convince us that it was with such assent on the part of the owner that he intended to dedicate the same to such a use. Hand street being a narrow way, and located in a populous part of the city, and Clinton street being

a business thoroughfare, and lot 28 unused and unfenced, it was very natural that the traveling public should encroach upon the same, for the lot and the street together were less than three rods wide, and but little or no significance should be given to the circumstance that the public passing from one street to the other did use lot 28 as a part of Hand street. It is not unusual that in the vicinity of cities and villages tracts of land lie unfenced, open to the common use for many years, and that well defined ways of passage are gradually formed. across them, and without other evidence on the part of the owner to dedicate the same to a public use, it would be unreasonable to hold that such use by the public, without protest on the part of the owner, was evidence of an intention on his part to dedicate it to a public use, to surrender the right to inclose and occupy the same as private property. (*Requa* v. *The City of Rochester*, 45 N. Y., 129 ; *Strong* v. *The City of Brooklyn, supra ; In The Matter of Rhinelander*, 68 N. Y., 107 ; *Rozell* v. *Andrews*, 103 id., 150 ; Cook's Highway Laws, 350.)

The city charter contains this provision, viz. : " Section 163. Whenever any street, alley or lane shall have been opened to and used as such by the public for the period of five years, the same shall thereby become a public street, alley or lane for all purposes, and the common council and executive board, respectively, shall have the same authority and jurisdiction over and right and interest in the same as they have by law over the other streets, alleys, lanes and highways of the city." This section does not apply to a case. where the owner has not, by some act on his part, dedicated the premises to public use. In *Strong* v. *The City of Brooklyn* (*supra*) the court, in commenting upon a statute with similar provisions, remarked that " the purpose of the statute evidently is to provide for the case of an owner of a tract of land in the city, who had laid it out into lots and planned and marked out streets upon it, and has thus, and by other like measures, invited the public use of them without in any more technical or formal manner investing the city government with a right to take them into possession and control ; and the initiatory act of the throwing out to the public use must be an indication by the owner that for such length and width over his premises a street or way is accorded for the public use." These

comments upon the statute then under consideration seem to us to be entirely applicable to the one contained in this charter.

The suggestion that the public had acquired a right by user, with the assent of the owner, for the period of over twenty years, is fully answered by what has already been said relative to the circumstances under which the public enjoyed the use of the premises. It is an undisputed fact that during this period mentioned by the witnesses, the city levied taxes upon this lot as a separate and distinct parcel of land, and that the same was paid by the respondent. This fact alone would ordinarily be received as evidence that the municipal authorities did not regard the use by the public, whatever may have been its nature and character, as being with the consent of the owner, or as indicating an intention on his part to yield the right to inclose and resume the use of the property and exclude the public therefrom.

Mr. Riley, who appealed from a majority report, was heard before the commissioners, and there presented proofs showing that he had the control and management of the property, paid the taxes thereon and had an equitable interest in the premises, and these facts and circumstances made him a proper party to the proceedings and gave him a right to be heard upon the question of compensation to be awarded for taking the land for street purposes. The order appealed from directs that the moneys be deposited subject to the order of the County Court, and that tribunal will protect the city and all parties having claims upon the fund.

The appellant makes the further point that the Special Term had no power to modify the report by increasing the award of damages above the amount awarded by the majority of the commissioners. The commissioners are required to preserve the evidence taken before them, and file the same in the office of the county clerk. When an appeal is taken, it is the duty of the clerk to certify to this court a copy of the report of the commissioners, with the proceedings and evidence had before them filed with him by said commissioners. An appeal may be taken from the order of a Special Term to the General Term of this court, and its decision is final. As to the power of the court on appeal, the provisions of the charter on that question are that the court shall consider the appeal and examine all the questions of law or of fact that may be involved

therein, and shall confirm or modify such report, as the court shall deem just. In case the court should annul the report, it may direct a rehearing before the same or other commissioners to be appointed by it; and in such case the same proceedings shall be had on such hearing, and for the examination, correction or review of any subsequent report, as provided by the said provisions. (Sec. 187, chap. 14 of 1880.) The appellant's contention is that the power to modify the report does not include the right to increase or diminish the damages.

The jurisdiction over the subject-matter is unlimited by the terms of these provisions, and we think it was the intention of the legislature to confer on this court the power to review the assessment of damages, and if dissatisfied with the award, to correct the same by increasing or diminishing the same, being guided in such determination by the evidence presented before the commissioners bearing on the question of damages. In terms the court is empowered to examine every question of fact involved in the controversy. The Special Term did not, as is claimed by the appellant, adopt the report of the minority, but corrected the report of the majority, fixing the amount of damages the same as was stated in the minority report. Our own examination of the evidence convinces us that the amount of damages fixed by the Special Term is not above the value of the property.

The order appealed from should be affirmed, with costs of this appeal to be taxed as if it was a civil action.

DWIGHT, J., concurred; MACOMBER, J., not sitting.

Order affirmed, with costs to be taxed as in a civil action.