## PARRIS *v.* VILLAGE OF GREEN ISLAND.

### (*Supreme Court, General Term, Third Department.* May 21, 1891.)

1. MUNICIPAL CORPORATIONS—DEFECTIVE STREET—NOTICE.

Plaintiff and his companions, when intoxicated, started in two wagons, side by side, from the front door of a village saloon, shouting boisterously, "Are you ready? let her go," and drove down the street at a gallop. When about 60 feet from the saloon plaintiff's wagon struck a sand pile on the edge of the street, and capsized, whereby plaintiff was injured. This occurred at night, in a wide street, when the moon was shining brightly. There was a street lamp at or near the sand pile. *Held*, that the question of the negligence of the town in permitting the sand heap to remain in the street was properly submitted to the jury, evidence having been given that it had remained in the street long enough to charge defendant with notice of its presence there.

2. SAME—CONTRIBUTORY NEGLIGENCE.

In such case it was proper to submit to the jury the question of contributory negligence of plaintiff growing out of his intoxication, but, the evidence on that point being strong and clear against him, and the jury having failed to take the same into consideration and give it due weight, the court should set aside the verdict and grant a new trial.

Appeal from circuit court, Albany county

Action by Jeffrey Parris against the village of Green Island. The action was prosecuted to recover damage alleged to have been sustained by the plaintiff from injuries suffered by him by being thrown from a wagon which, plaintiff claims, was upset by coming in contact with a pile of earth which, plaintiff claims, defendant negligently suffered to be in one of its streets. The claim was resisted at the trial by the defendant mainly upon the ground that the pile of earth in the gutter of the street was temporarily placed there by an adjoining owner while repairing his premises, and was not a negligent act or omission of the defendant or of such adjoining owner which the defendant was required to guard against. Also that the plaintiff was not free from negligence; that he and his associates, at the time of the alleged injury, were intoxicated, and were engaged in negligently running the horses attached to the wagon in which plaintiff was riding, and negligently drove or permitted such horses to run with the wagon into the gutter out of the usual traveled part of the street, thereby causing the accident; and that it was caused or contributed to by the plaintiff's negligence. From a judgment entered upon the verdict of the jury, and from an order denying a motion for a new trial made upon the judge's minutes, defendant appeals.

Argued before LEARNED, P. J., and LANDON and MAYHAM, JJ.

*Henry A. King*, for appellant. *P. D. Niver*, for respondent.

MAYHAM, J. The accident complained of occurred on one of the defendant's streets, which was straight, with a road-way of 36 feet in width and a sidewalk on either side, each 12 feet wide. On the 14th of April, at about 9 o'clock in the evening, the plaintiff, with three companions, started from a saloon on West street, in the village of Green Island, in a wagon, at the same time that another party, in another wagon, started from the same saloon, all driving in the direction of Cohoes. The undisputed evidence tends to prove that the two parties came out of the saloon at the same time, and got in their wagons, and started in the same direction, at a rapid rate of speed, some of the witnesses saying the horses were running from the start. A witness, who was in a house adjoining the saloon, saw the two parties get in their

wagons and start. The witness testifies: "I saw the parties get into the wagons,—both parties. *Question.* At Glade's? *Answer.* Yes, sir; and one party says, 'Are you ready?' and somebody says, 'Yes, we're ready.' And somebody offered to bet, one party offered to bet—I do not know who it was— that they could beat the other to Cohoes; and they both started." The witness testifies that they both started very swiftly, and he thought the team was running; that the parties were talking and shouting boisterously, the horses going apparently at the best of their speed. The wagon in which plaintiff was seated was nearest the saloon, and on starting ran along the gutter, and the other wagon was between it and the middle of the street; and the plaintiff testifies that in getting into the wagon one party said to the other, "Are you ready?" and the answer was, "We are ready," and both started at the word "Let her go;" that the horses were running, and at the distance of about 60 feet from the point of starting plaintiff's wagon came upon the earth pile in the gutter, and was capsized, and plaintiff thrown out and injured. These facts are substantially corroborated by all of the witnesses who testify upon that subject. The evidence further discloses that the plaintiff and his companions started from Cohoes at about 2 o'clock in the afternoon, and drove to Lansingburgh, Troy, N. Y., West Troy, Green Island, and other places, stopping in their passage at at least eight saloons and hotels between that time and the time of the injury, at all of which the party, or some one or more of them, drank some kind of intoxicating drink; and there seems no doubt from the evidence that the entire party were more or less under the influence of intoxicating drink. At the time of the accident the night was clear, the full moon and stars were shining, and there was a street lamp lighted at the corner near the place of the accident. The mound of earth over which the carriage was driven which capsized it was variously estimated by the witnesses from six inches to two feet high, and as variously stated as extending from the sidewalk from two to six feet towards or into the street. There is also some conflict in the evidence as to the length of time this mound of earth had been suffered to remain in the street in the position in which it was at the time of the alleged injury.

The foregoing summary of facts, as proved in the case, is sufficient to present the questions which are submitted for the consideration of this court, which are: (1) Was this municipality guilty of negligence in allowing a pile of earth to remain in the street? (2) Did the plaintiff, by his proof, show he was guilty of any negligence on his part which contributed to his injury of which he complains? (3) Was any error committed on the trial in the receipt or rejection of evidence, or in the charge of the judge, or his refusal to nonsuit or set aside the verdict, to the prejudice of the defendant, for which the judgment should be reversed? There was no proof in this case of any actual notice of the defendant, or any of its officers charged with the duty of keeping the streets in a reasonably safe condition for the public travel, of this obstruction. But the testimony shows that it had been substantially in the condition in which it was at the time of the accident for several days, and we think it was properly left to the jury from that evidence whether it had remained there sufficient length of time to become known, and notorious, and afford a full opportunity for the defendant, through its agents, to learn of its existence so as to impute to it notice and charge of negligence in not removing the obstruction. *Todd* v. *City of Troy,* 61 N. Y. 509; *Hart* v. *City of Brooklyn,* 36 Barb. 226; *Conrad* v. *Village of Ithaca,* 16 N. Y. 158; *Requa* v. *City of Rochester,* 45 N. Y. 129.

The next question is, did the plaintiff, by his own act or negligence, contribute to the injury? Or, rather, was there any evidence from which the jury could find that he was free from contributory negligence? The learned counsel for the appellant urges, these circumstances appearing in the evidence as tending affirmatively to prove contributory negligence on the

part of plaintiff, (1) the apparent inebriated condition of the plaintiff and his associates; (2) the reckless manner of driving the team at the time of the injury; (3) the abundance of room in the street, aside from that occupied by the obstruction, and the fact that the obstruction was plainly visible from its size and the glare of light by which it was surrounded.

As to the first point,—the condition of the plaintiff and his associates. It seems to have been settled upon authority that as to whether or not that constituted contributory negligence was a question for the jury. In *Healy* v. *Mayor, etc.*, 3 Hun, 708, it was expressly held in an action brought to recover damages for injuries sustained in consequence of defects existing in a sidewalk it appeared that the plaintiff was intoxicated at the time of the accident; that it was for the jury, and not the court, to say whether or not the intoxication contributed in any degree to the injury sustained. In that case the court, in its opinion, pronounced by BRADY, J., and concurred in by DANIELS, says: "The defense as suggested was the intoxication of the plaintiff; but that did not deprive him *per se* of protection. By putting himself in that unfortunate condition he was not abandoned by the law. He was only subject to its consequences, whatever they might be, and if his drunkenness in any way contributed to his injury he must bear the burden. Whether it did or not was a question of fact for the jury to determine. It was for them, and not for the court, to say whether he was intoxicated at the time of the accident, and whether, if he was, it contributed in any degree to the injury which he received." The same doctrine was held in the case of *Ditchett* v. *Railroad Co.*, 5 Hun, 165. There is no doubt but that the jury were authorized to take into account the condition of the plaintiff and his associates, and determine whether they were drunk or sober, and whether, if drunk, their condition contributed to the injury complained of; but within the above authorities they, and not the court, must determine that question, and the same was therefore properly submitted to them. Upon this question we are referred by the learned counsel for the appellant to the case of *Monk* v. *Town of New Utrecht*, 104 N. Y. 552, 11 N. E. Rep. 268. But we fail to see that that case in any way changed the rule laid down in 3 and 5 Hun, to which we have referred. The case last cited turned upon the question of the liability of a town to provide a guard upon steep declivities from the sidewalks of a country road. It is true that in that case the court of appeals hold that the nonsuit was also proper on the ground of the plaintiff's contributory negligence, which, from the circumstances of that case, was a clear result of his intoxication.

The next point upon this branch of the case urged as contributory negligence was the rapid driving of the team at the time of the injury. The plaintiff was not at the time of the accident driving the team, but I think it may be assumed that as between him and the appellant he is entitled to no immunity from that fact, as the defendant owed him no duty to protect him against the consequences of the carelessness or negligence of the driver of his own selection. The court, when asked to hold and charge that it was negligence *per se* to drive a horse rapidly through the street, as described in this case, said: "I would not like to charge that as matter of law; I think that is a question of fact for the jury." We think in that the learned justice was right. The law fixes no maximum rate of speed at which teams attached to vehicles shall be driven through the streets of a village. What is a reasonable, prudent, or safe rate of speed is therefore a question of fact for a jury, to be governed by the circumstances of the case. But in this case we think the jury failed to take into consideration and give due weight to the evidence which bore upon the question of the contributory negligence of the plaintiff and his associates. The street was amply sufficient in width for two or more teams to be driven abreast at the point of the injury, without coming in contact with the alleged obstruction. It was well lighted at the point where the

accident occurred. The conduct of the party, and the frequency with which they were shown to have imbibed intoxicating drink that afternoon, raised a fair presumption that they were more or less intoxicated, and their shouts and boisterous conduct on starting from the restaurant immediately before the accident of this Sabbath evening went far to establish a want of suitable care on their part, if they did not establish affirmatively contributory negligence. In *Dubois* v. *City of Kingston*, where the plaintiff was running to a fire in the night-time, he stumbled over a stepping stone in front of a building, where the walk was wide enough to afford ample opportunity for pedestrians to pass without collision, and where the street was well lighted, the court of appeals reversed the judgment for the plaintiff upon the verdict of a jury on the ground that the plaintiff was guilty of contributory negligence. *Dubois* v. *City of Kingston*, 102 N. Y. 219, 6 N. E. Rep. 273. We think the evidence of contributory negligence in this case is quite as strong, if not stronger, against the plaintiff than in the case last cited, and that this judgment should be reversed. Judgment reversed, and a new trial ordered, with costs to abide event.

LEARNED, P. J., (*concurring.*) In my opinion the evidence of intoxication and careless driving was such that the verdict should be set aside as against the weight of evidence. The parties had been driving all the afternoon and evening, stopping at saloons, and drinking. It is not difficult to understand their condition, nor is it possible not to understand the mode in which they started from the last saloon which they patronized. Two wagons, side by side, each starting for Cohoes. "Are you ready?" "Let her go." The two start together. The one, in which plaintiff is, being near the gutter, runs over a pile of dirt, and is upset. This was about half past 9 P. M. April 14th, when the sun would set about 7 and the moon would rise about a quarter before 8, the moon being full the next day. It was on a clear night, in a straight and wide street. This seems to me to be one of those cases where the court should not permit a verdict to stand, the whole evidence shows so plainly the intoxicated condition of the parties, and their careless act in driving over the pile of dirt.

LANDON, J., (*concurring.*) While I fully agree with my Brother MAYHAM that this case presents questions of fact for the jury, and that there are no errors of law requiring a reversal, still I think the finding that the plaintiff did not by his own negligence contribute to his injury is against the clear weight of evidence. We cannot substitute our opinion for the verdict of the jury, but the granting of a new trial will still leave the decision of the controverted question of fact to them, and I think this is a proper case in which to direct in our discretion that another jury shall consider the evidence and render a verdict.