White *v.* Town of Stamford.

ELBERT WHITE AND OTHERS *vs.* THE TOWN OF STAMFORD.

The town of *S* was authorized by the legislature to issue bonds to the amount
of $100,000, to raise a fund to be used in the erection of a town hall. The
town accepted the resolution, and adopted as a plan for the hall "a three-story
building, the ground floor to be for stores, the second floor for a court room
and offices and storage room for the stores, and the third story for a town hall."
The legislature at its next session approved the action of the town and au-
thorized the erection of the building as planned, and the town was proceeding
to erect and had nearly completed the same. Upon a petition for an injunc-
tion brought by certain tax-payers of the town before the passage of the reso-
lution of the legislature last mentioned, it was held—1. That the town had
power under the general law to build a town hall for its public meetings, and
that, so long as the building was erected solely for the purposes of a hall, the
town had the right within reasonable limits to judge for itself of the size and
style of the structure. 2. But that the town had no power without the aid
of special legislation to appropriate money to erect such a building as the one
in question. 3. That the special legislation in the present case was not void
as being against common right and in violation of fundamental principles.
4. That even if the authority was insufficient, yet as the building was nearly
completed and serious loss would result from an abandonment of work upon
it, the injunction ought to be refused and the petitioners be left to such remedy,
if any, as they might have at law.

PETITION for an injunction; brought to the Superior Court
in Fairfield County. The following facts were found by a
committee.

The General Assembly, at its May session, 1868, passed a
resolution authorizing the town of Stamford to issue bonds to
the amount of $100,000, for the purpose of raising a fund to
be called "The Town Hall Fund," to be applied to purchas-
ing a site for, and erecting thereon, a town hall, with proper
furniture for the same; the resolution containing a condition
that it should be accepted by the town at a town meeting
specially called for the purpose. The town, at a town meet-
ing held on the 26th day of December, 1868, voted to accept
the provisions of the resolution, and authorized the selectmen
of the town to borrow the sum of $100,000, or so much thereof
as should be necessary for the above purpose, and to issue
bonds therefor in accordance with the resolution of the Gen-
eral Assembly. At a town meeting legally called for the

purpose and holden on the 29th day of January, 1870, the town voted—"That the general plan for our town hall shall be a three-story building of brick or stone, with such trimmings as the building committee may adopt; that the ground floor be for stores, or business purposes for the town; the second story for a court room, offices, and storage rooms in connection with the stores, and the third story for a town hall;" and appointed a building committee with full power to adopt such plan, not inconsistent with this vote, for the construction of a town hall, as they should deem for the best interests of the town, and to make contracts for the erection of the building in accordance with such plan, provided the total amount contracted to be paid should not exceed $100,-000.

This building committee has contracted for, and is now erecting a building in accordance with the vote, and has incurred obligations to the amount of between $95,000 and $100,000 therefor. In the building, the walls of which are already built above the second story, the first story or ground floor is divided into eight rooms, five of which are twenty feet in width by fifty-seven feet in depth, and thirteen feet high each; one of which is twenty feet wide by forty-five feet deep, with a vault in the rear, and thirteen feet high; and two rooms each twenty feet by twenty feet, with vaults in each, and each thirteen feet high. The second floor is divided as follows: one room twenty by forty-five feet, and sixteen feet high, to be connected by doors with two rooms each twenty by twenty-two feet, one being in the rear and one in front, the two rooms being on opposite sides of a hall hereinafter referred to. Connected with the rear room is a vault, and this rear room by means of folding doors is also to connect with another room twenty by twenty-two feet. There are nine other rooms, twenty by twenty-two feet, placed on opposite sides of a hall terminating at the first mentioned room, all except that first mentioned thirteen feet high. The third story is to be used as a town hall, and is to be thirty feet high, and consist of one single room, with commodious entrances, three in number. At its north end, over the first

mentioned room in the second story, it is twenty-seven feet high, the floor being raised over the room three feet, constituting a platform. The building is one hundred and fifty feet long by sixty feet deep.

The petitioners, who are tax-payers of the town, brought their petition for an injunction against the erection of the building and the contracting of any indebtedness therefor, and for a temporary injunction, on the 31st day of May, 1870. A temporary injunction was issued by a judge of the Superior Court, which injunction, upon a public hearing upon a motion to dissolve the same, was continued in force and a dissolution refused. Afterwards, on the 23d day of June, 1870, the following resolution was passed by the General Assembly at its May session of that year:

"*Resolved by this Assembly* :—That the town meetings of the town of Stamford, held at said Stamford October 5th, 1868, December 26th, 1868, October 4th, 1869, and January 29th, 1870, be hereby legalized, and that all the votes, resolutions, and other doings in said meetings relating to the building of a town hall, or the issuing of bonds, notes or other certificates of debt under the resolution of the General Assembly of Connecticut approved July 17th, 1868, authorizing the town of Stamford to issue bonds, be, and they hereby are, ratified, validated, legalized and confirmed, and said town is hereby authorized to erect said town hall in accordance with the votes of said town."

After the passage of this resolution, on the 6th day of July, 1870, the temporary injunction was dissolved by the judge who granted it.

Upon these facts the case was reserved by the Superior Court for the advice of this court.

*Child* and *Curtis*, for the petitioners.

1. The resolution of the General Assembly of May, 1868, accompanied by the subsequent action of the town in accepting it by its vote of December 26th, 1868, was a complete grant and acceptance of the powers in the resolution expressed. The subsequent resolution of the General Assembly

White *v.* Town of Stamford.

of May, 1870, so far as it seeks to confirm the resolution of May, 1868, and the action of the town under it, was wholly unnecessary, and was therefore of no effect. *The King* v. *Pasmore*, 3 T. R., 244. This resolution then, if it has any effect, only affects the town vote of January 29th, 1870. It therefore only authorizes the town to erect such a building as is contemplated by that vote, but does not authorize the town to appropriate the fund raised under the act of 1868, to the erection of the building contemplated by the vote of January 29th, 1870. Sedgw. Stat. & Const. Law, 243, 260. We come then to this question—Is the building contemplated by the vote of January 29th, 1870, such a building as is contemplated by the resolution of 1868, or such as the town under the general statutes of this state or under its implied powers is authorized to erect? The vote of 1868 has reference to raising a fund to be used for the sole purpose of purchasing a site and erecting thereon a building for a town hall. It mentions no other object, and has no other object in view. The object of the legislature was simply to authorize the town to raise a fund in some other mode than the usual one of taxation. The town already possessed the power of building a town hall. It was among its implied powers. It only required legislative action for the purpose of raising the money by issuing bonds.

2. Had the town under the statutes of this state, or under its implied powers, a right to pass the vote of January 29th, 1870, or to erect a building in conformity therewith? This vote contemplates the erection of a building for purposes beyond the ordinary powers of the town; and this is the leading object. It has for its object the building of stores and offices, storage rooms for such stores, and a town hall as merely incidental. Towns, like other corporations, can exercise no powers except such as are expressly granted, or such as are necessary to enable them to discharge their duties or to carry into effect the objects of their creation. *Webster* v. *Harwinton*, 32 Conn., 131; *Booth* v. *Woodbury*, Id., 125. They therefore have no right to erect a building for purposes not necessary for the town, and for business in which the

town has no right to engage. *Brainerd* v. *New London*, 22 Conn., 552 ; *Abendroth* v. *Greenwich*, 29 id., 363 ; *Hartford & New Haven R. R. Co.* v. *Croswell*, 5 Hill, 388 ; *Hodges* v. *City of Buffalo*, 2 Denio, 110 ; *Tash* v. *Adams*, 10 Cush., 252 ; *Spalding* v. *City of Lowell*, 23 Pick., 76 ; *Proprietors of Meeting House* v. *City of Lowell*, 1 Met., 538 ; *French* v. *Inhabitants of Quincy*, 3 Allen, 9 ; *Beaty* v. *Knowler's Lessee*, 4 Peters, 152.

3. If the town vote of January 29th, 1870, has any validity, it derives its whole force from the resolution of the General Assembly of 1870. That resolution we claim was wholly inoperative, because it was not accepted by the town and did not provide for such acceptance. The object contemplated by the town vote was strictly a private one. The building of stores and offices is strictly a private matter. It is like the erection of manufactories, mills, mechanics' shops, or private dwellings. It does not differ materially from merchandizing, publishing, farming, or manufacturing, or any other private enterprise. Cooley's Const. Limitations, 532, 533, 537. If the vote had for its object a strictly private purpose, the General Assembly had no right to force upon the town a grant of power for that purpose without its acceptance. The town is a public quasi corporation. Cooley's Const. Limitations, 240 ; *Beardsley* v. *Smith*, 16 Conn., 368. Its rights and duties are of a public character. It is composed of the inhabitants of a territorial portion of the state, organized solely for the purposes of government, and to assist in carrying on the government of the state. It was organized without its consent, and has enjoined upon it certain duties of a public character. It is obliged to make and repair the roads within its limits, to support its paupers, to educate its children, to elect its local police, to send its representatives to the General Assembly, &c. A town is created for public purposes only. It differs from a city. A city is incorporated for private as well as public purposes. And it must be incorporated by the consent of its inhabitants. Its charter is to a certain extent like the charter of a private corporation, and it requires an acceptance by its citizens. Cooley's Const. Limitations, 248, and cases

White *v*. Town of Stamford.

cited in note 1. A town differs entirely from a private corporation. The charter of a private corporation is a grant of power to be accepted by the corporation, and when accepted becomes a contract between the state and the corporate body. Angell & Ames on Corp. § 81 ; *Dartmouth College* v. *Woodward*, 4 Wheat., 518. When the legislature seeks to confer upon a public corporation a power having for its object a strictly private purpose, such power is treated and considered in the same manner as a grant to a private corporation, or a grant creating such private corporation. *Bailey* v. *Mayor &c. of New York*, 3 Hill, 531 ; *Lloyd* v. *Mayor &c. of New York*, 5 N. York, 369 ; Cooley's Const. Limitations, 249, 252. If the resolution of the General Assembly is to be considered as a grant to a private corporation, then it can have no effect unless it has been accepted by the members of the corporation. *Dartmouth College* v. *Woodward*, 4 Wheat., 558, 592, 656 ; *Marlborough Manufacturing Co*. v. *Smith*, 2 Conn., 579 ; *Rex* v. *Vice Chancellor of Cambridge*, 3 Burr., 1656 ; *Rex* v. *Askew*, 4 id., 2200 ; *The King* v. *Miller*, 6 T. R., 277 ; *Ellis* v. *Marshall*, 2 Mass., 269 ; *Hasbrouck* v. *City of Milwaukee*, 13 Wis., 37 ; Ang. & Ames on Corp., §§ 81–87. The resolution of the General Assembly has never been accepted. We cannot presume an acceptance from the passage of a previous vote which is absolutely void. Nor can we presume an acceptance by acquiescence. This application for an injunction has been constantly pending, and is the only way in which the citizens of Stamford can manifest their dissent. It is the only way in which the non-voting portion of the community can manifest their dissent. No acceptance can therefore be presumed, and there has been no acceptance.

4. The resolution of the General Assembly of May, 1870, is unconstitutional and void. It attempts to render the town liable to taxation for merely a private purpose. Taxes can be levied only for a public purpose. Cooley's Const. Limitations, 470, 479, 487, 489, 495. To empower towns to engage in private enterprises is contrary to sound policy. Cooley's Const. Limitations, 527 note 1, 537, 540 note 1. It destroys individual liberty and the right of private property, and thus

violates the fundamental principles of legislation.   *Welch* v. *Wadsworth*, 30 Conn., 155; *Sears* v. *Cottrell*, 5 Mich., 258; *Detroit & Howell R. R. Co.* v. *Township Board of Salem*, 9 Am. Law Reg., 487; *Whiting* v. *Sheboygan Railway Co.*, id., 156; *Hanson* v. *Vernon*, 27 Iowa, 28; *Weeks* v. *City of Milwaukee*, 10 Wis., 263; *City of St. Louis* v. *Allen*, 13 Misso., 415.

*Beardsley* and *Olmstead*, for the respondents.

1.   The town had power under the general statutes of the state to erect the building in question.   The General Court of the colony on the 10th of October, 1639, passed the following order:—" The townes of Hartford, Windsore, and Wethersfield, or any other of the townes within this jurisdiction, shall each of them have power   *   *   *   to choose their own officers *and make such orders* as may be for the well ordering of their owne townes." 1 Col. Rec., 36. Towns without any other authority than this, built churches, grist mills, saw mills, and dams, at a common charge.   The town of Stamford built several churches, a parsonage, a grist mill, and a dam, at two different times.   Huntington's Hist. of Stamford, 22, 123, 124, 130, 134. The town also settled ministers at the common expense. id., 130.   Subsequently, in the year 1672, the powers of towns were extended so far as to give the settled inhabitants of every town power "to make such *orders, rules,* and *constitutions* as may concern the welfare of the town."   Rev. Stat. of 1796, p. 414.   And subsequently, the language giving powers to towns was so altered as to read " to make such orders, rules and regulations as they may deem expedient," &c. which is the language of our present statute.   Gen. Statutes, p. 102.   If towns by a law giving them power to make "orders" for the welfare of the town, could do all that has been stated, it would seem that under their present powers the town of Stamford might erect such a building as its votes contemplate, without further permission from the legislature.

2.   The private act of 1868, and the votes of the town, show that the object of the erection of the building, as voted, was

for the accommodation of the town. The size, situation and connections of the rooms in the building show that it is adapted, not only to the present wants of the town, but to the future as well. The construction of rooms which may for the present be rented for other than town purposes, is incidental to the object for which the building was erected, and is an economical measure, for the pecuniary advantage of the town, because of the great value of the site upon which the building is situated. The decisions of the courts in this state, we think, justify the town in erecting such a building. *Sheldon* v. *Centre School Dist.*, 25 Conn., 224; *Todd* v. *Hall*, 10 id., 544. Under the Massachusetts statute towns are restricted to the cases of providing for the poor, for schools, for the support of public worship, and *other necessary charges.* Yet under powers derived from the words " other necessary charges," under the decisions of the courts in Massachusetts, the towns in that state would be legally competent to erect such a building as the one voted by the town of Stamford. *Stetson* v. *Kempton*, 13 Mass., 278; *Willard* v. *Newburyport*, 12 Pick., 229; *Allen* v. *Taunton*, 19 Pick., 487; *Spaulding* v. *City of Lowell*, 23 Pick., 76; *Haven* v. *City of Lowell*, 5 Met., 35, 40; *George* v. *School District in Mendon*, 6 Met., 510.

3. But in this case the legislature has ratified and confirmed the votes of the town, if illegal before. *Thomas* v. *Leland*, 24 Wend., 65; *Merrick* v. *Inhabitants of Amherst*, 12 Allen, 500; *Bridgeport* v. *Housatonic R. R. Co.*, 15 Conn., 476; *Beardsley* v. *Smith*, 16 id., 368; *Booth* v. *Woodbury*, 32 id., 118; *Detroit & Howell R. R. Co.* v. *Township Board of Salem*, 9 Am. Law Reg., (Aug., 1870,) p. 487.

4. After the legislature had confirmed the action of the town it was not necessary that the town should accept the confirmatory act by a vote on the subject. *Bartholomew* v. *Harwinton*, 33 Conn., 408; *Terrett* v. *Sharon*, 34 id., 105; Cooley on Const. Lim., 231; *Hampshire* v. *Franklin*, 16 Mass., 86; *Dorgan* v. *City of Boston*, 12 Allen, 223, 236; *Town of Guilford* v. *Supervisors of Chenango County*, 13 N. York, 143, 149; *The People* v. *Mitchell*, 35 id., 551.

SEYMOUR, J.   The first point pressed by the counsel for the respondents in the present case, is that the town has power to do what it is doing without the aid of special legislation.

We do not doubt the power of towns to build town halls for their public meetings, and, if the building is solely for the purposes of a hall, the town within reasonable limits must judge for itself of the size and style of the structure.   But it is obvious that the building complained of is not a mere town hall.   It indeed contains a hall in its third story, but the other stories are to a considerable extent to be rented, in the expectation no doubt that the rents will ultimately pay wholly or in part the expenses of the entire structure.   Something of the same kind on a small scale has sometimes been done without objection in the towns and cities of the state. It is sometimes incidental to a public building that portions of it are not needed for public purposes, and these are fitted up and rented and the rents applied toward paying the expenses of the building.   But in the present instance the rents are more than incidental.   The enterprise evidently involves extensive arrangements for renting, and the selectmen of the town, or a committee for managing the premises, will have the control of important interests which seem to be rather private than public in their character and nature.   A town is a public corporation, not adapted to carry on trade and rent property.   Its citizens are members of the corporation not by choice but by compulsion of law, and ought not to be forced into a partnership in carrying on business for gain. The impolicy of entrusting to town agents the management of private business is very obvious; and we think the legislature has not by any general law conferred authority upon towns to erect buildings for rent, and also are of opinion that the resolution of 1868 cannot be construed as giving authority to the town to erect such a structure as is being built.

That resolution is intended mainly to authorize the issue of bonds, and the hall contemplated by it is only a large common hall for public purposes, to be built simply as and for a hall.   But the resolution of 1870 recites the vote of the

town in which the plan of the building is given, and among others ratifies that vote, and expressly authorizes the town to erect the hall in pursuance of its votes. We have here then in the resolution of 1870 an express act of the General Assembly authorizing the town to do precisely that which we are asked to enjoin against being done. The petitioners are therefore obliged to say, and they do say, that the resolution of 1870 is void. And it is claimed to be void, not because it is in contravention of any provision of the constitution of the United States or of this state, but because, as the petitioners say, it is against common right and in violation of the fundamental principles of the social compact.

The argument of the petitioners is that towns are such as branches of the government for public purposes, and that their powers should be limited to the simplest possible discharge of their necessary public duties; that a citizen of a town cannot lawfully be taxed to raise money to be expended in private enterprises and managed and controlled by agents chosen in town meeting; and that if this resolution is sanctioned as binding, then hereafter towns and cities may by legislative authority be converted into mere trading corporations. We are not insensible to the force of the objections against extending the power of towns so as to enable them to engage in private business, but the power which the court is called on by the petitioners to exert in this case is a power to be exercised only in the clearest cases. Every presumption is properly to be made in favor of the acts of a coördinate branch of the government. We are bound to presume that the whole matter was carefully considered by the legislature. The courts of Connecticut have never to our knowledge exercised the power now invoked, of holding an act of the General Assembly void, merely because of its being in violation of the fundamental principles of the social compact, and we would not commence the exercise of that power in a case of any reasonable doubt, and certainly would not volunteer to do it in a case the decision of which does not necessarily call for such exercise of power.

It appears that the town has acted upon the resolution in

controversy and the building is now well nigh completed. An injunction at this stage would produce confusion and give rise to embarrassing questions, and we all concur in holding that on these grounds the injunction asked for must be denied. We therefore put our decision on the ground that the building is now so far completed that an injunction ought not to issue, and the parties are left to whatever remedy they may have, if any, at law.

The Superior Court is advised to dismiss the petition.

In this opinion the other judges concurred.