SYLVESTER GREENWOOD AND OTHERS vs. THE TOWN OF WESTPORT.

The defendant voluntarily undertook to operate a drawbridge constituting part of a public highway in the town of Westport over a navigable river, and employed a draw tender for that purpose. The plaintiffs' vessel was unreasonably delayed by the negligent failure of the defendant to seasonably open the draw, in consequence of which the vessel was carried away by the tide and injured. In a libel *in personam* brought against the town in the admiralty court it was held:—

1. That it was immaterial that the warning for the town meeting at which the draw tender was first appointed contained no notice of such intended action, since the subsequent action of the town in paying the draw tender and of the selectmen in reappointing him constituted a ratification by the town; and moreover, because the negligence complained of occurred while the draw was in the actual charge of the first selectman and agent of the town.

2. That the town having assumed the duty of operating the draw could not now be permitted to claim that its action was unauthorized or *ultra vires*, but was liable for the consequences of its negligence, although no statute of the state imposed such liability.

3. That such claim could only be invoked where the acts done or contracts made were necessarily wholly outside of the corporate powers of the town; and that the liability in actions *ex delicto* rests upon an entirely different principle.

4. That the voluntary action of the town in operating the draw, for the protection of the bridge itself, or for the convenience of navigators and the benefit of the wharves above the bridge, or for the convenience and safety of travelers on the highway, was not, in any sense, a public, governmental act.

5. That the rule that an action will not lie against a *quasi* corporation for neglect of a public duty unless the right of action is conferred by stat-

ute, is of limited application; and in the case of towns applies only to the neglect or omission of a town to perform such duties as are imposed on all towns without their corporate assent, and exclusively for public purposes.

6. That Federal Courts in administering the rules of the common law within a state, are bound by the local policy of such state as to the extent of the powers and liabilities of its municipal corporations, whenever such powers and liabilities have been determined by legislative authority or the settled decisions of its highest courts.

7. That a court of admiralty had power to administer relief in the present case according to its own rules of procedure.

ACTION of libel *in personam* against the town of Westport; brought to the United States District Court for the District of Connecticut. The case is the same reported in Conn. Reports, Vol. 62, p. 575.

*S. Park*, for the libelants.

*C. Thompson*, for the defendant.

TOWNSEND, *District Judge*. This is a libel *in personam* against the town of Westport in the district of Connecticut, to recover damages to the steam barge Hebe, alleged to have been caused by the negligence of said town in not seasonably opening a drawbridge across Westport river, by reason whereof said barge was delayed until she was carried away by the ebb tide and struck the bottom, and sank. The defenses are, denial of negligence and denial of liability, even if there was negligence.

The question of jurisdiction has already been presented upon exceptions, and decided adversely to the defendant. 53 Fed..Rep., 824.

The defendant town is located on the banks of Westport river, which is navigable for steam barges, such as the Hebe, only at or about high tide. In said town, and some 250 to 300 feet above said drawbridge, are certain stores and wharves. At a short distance beyond this point the river becomes a mere shallow stream, and is not navigable. A drawbridge was originally built across said river at the point where the present bridge is located, under a charter granted in 1796 to a private corporation. Said charter provided that the company

should make a draw in said bridge " sufficient to accommodate all the navigation which may pass up and down said river," but nothing was said about operating said draw. In 1857, said corporation abandoned said bridge, and the defendant town then took charge of, and has ever since maintained it. No obligation was ever imposed upon any one to operate said draw, and, down to 1880, the persons in charge of vessels passing through said bridge opened and shut said draw. In 1880, complaint was made that persons passing through said draw did not fasten it properly, and a draw tender was appointed at the town meeting to take care of the draw. After that time a draw tender was appointed at every annual town meeting, until recently, when the selectmen took charge of the matter, and employed the draw tender. Such draw tender, with the aid of the selectmen and others, has opened the draw since 1880, and has been paid for such services by the town.

It does not appear that any notice of the proposed appointment of such draw tender was inserted in the warning of such meetings, but this does not seem to be material, for even if such notice might originally have been necessary, the action of the town and of its selectmen since 1880, would constitute a ratification of such appointment. *Town of Rocky Hill* v. *Hollister*, 59 Conn., 434. A further reason why this point is not material is to be found in the fact that the alleged omission to act, or acts of misfeasance, occurred on this occasion when the draw was in the charge of the first selectman and agent of the town.

The town of Westport has never been required by any legislative act to provide an attendant to operate said draw. In other cases, where such operation is required, a special provision to that effect has been inserted in the charter for such bridge.

\*      \*      \*      \*      \*      \*      \*      \*

The question now presented is, whether the town of Westport, being under a statutory obligation to maintain this highway and bridge over a navigable stream, but under no obligation to operate said drawbridge, having voluntarily

operated it for ten years, and, on the day of this accident, the bridge tender being absent, having undertaken, through its first selectman and others, to operate said draw, and having been negligent therein, is liable to this libelant for damages suffered by reason of such negligence.

One branch of the question involved was raised and discussed upon exceptions to the jurisdiction, and was decided adversely to the defendant. 53 Fed. Rep., 824.

But the forcible and ingenious argument of counsel, after hearing on the merits, has seemed to call for a consideration of the whole question, in the light of the facts developed at the trial.

The argument of the senior counsel for defendant asserts, and proceeds upon the assumption, that the breach of duty complained of consists in an omission or neglect to perform the public duty of opening a draw, and that this duty could only result from the duty imposed by the General Statutes of Connecticut upon the town of Westport, to maintain, in proper condition, the highways and bridges of the state within that town, and that the defendant town cannot thus be held liable for such negligence in the absence of a statutory provision to that effect.

The libel merely alleged that said drawbridge was part of a public highway, crossing public navigable waters of the United States, and as such was in the care, control and management of the defendant. The breach of the duty complained of was the negligent failure of the town to open said draw, or negligence in its control and operation. It was not claimed that there was any public duty or obligation to operate said draw, arising from any general statute or other legislative act. On the contrary, the counsel for defendant who tried the cause proved, upon the trial, and claimed in his argument and brief, that the defendant town in 1857 voluntarily assumed the obligations of a charter granted in 1796 to a turnpike company; that neither said company nor said town was ever under any obligation, by legislative act or otherwise, to operate said draw, and that down to 1880, said draw had always been operated by the persons passing

Greenwood et al. *v.* Town of Westport.

through it in vessels; but that in 1880 the town voluntarily employed a draw tender to operate it. There is no statute requiring towns to open or close drawbridges, or to provide draw tenders therefor, and it is admitted that, where a draw tender is required, such requirement is uniformly provided for by charter. Inasmuch, therefore, as there is an express statutory obligation resting upon towns to maintain highways for public travel, and none in reference to the operation of drawbridges, the legal position of the town, in reference to the two matters, is necessarily radically different.

It is well settled that the liability of a municipal corporation, created by charter, is greater than that of involuntary *quasi* corporations, such as towns. Dillon, Mun. Corp., § 961. It is settled in Massachusetts that where public or governmental duties are imposed by statute upon a town or other *quasi* corporation, solely for the benefit of the public, such corporation is not liable to a private action for neglect, in the performance of such corporate duty, unless such action is given by statute. *Hill* v. *Boston*, 122 Mass., 344.

And it has been held in Connecticut, that a municipal corporation is not liable for the negligent performance of a strictly governmental duty. *Hewison* v. *New Haven*, 37 Conn., 475; *Jewett* v. *New Haven*, 38 id., 368. That such exemption from liability is not in harmony with the general rule of liability in this country, nor with the decisions of the federal courts, is settled by the repeated adjudications of the Supreme Court of the United States. *Barnes* v. *The District of Columbia*, 91 U. S. 540, citing *Jones* v. *New Haven*, 34 Conn., 1; *Evanston* v. *Gunn*, 99 U. S., 660; *Chicago* v. *Robbins*, 2 Black, 428; *Neb. City* v. *Campbell*, id., 590; *Weightman* v. *City of Washington*, 1 id., 50; *Detroit* v. *Osborne*, 135 U. S., at page 498; see also *Patton* v. *Montgomery*, 96 Ind., 131; *Goshen* v. *Myers*, 119 Ind., 196.

But for the present consideration of this question, it will be assumed that the federal courts are bound herein to follow the decisions of the highest court of this state.

In view of the further claim of the defendant that if no statutory obligation was imposed upon the defendant to

operate said draw, it cannot be liable for negligence, because it was without legal power to maintain or manage it, it becomes important to consider the powers of the town, the character of the acts undertaken by it, and the rules of law applicable thereto. It will not be denied that the duty of operating the draw is one which might have been imposed upon the town by the legislature, just as the duty of building drawbridges across navigable streams has been imposed by the act of 1880. *Escanaba Co.* v. *Chicago,* 107 U. S., 678; *Miller* v. *Mayor,* 109 U. S., 385; *Weisenberg* v. *Winneconne,* 56 Wis., 667. A town has the power to acquire and hold all such property as may be reasonably necessary for those purposes of municipal government for which it exists. Dillon, Mun. Corp., § 562, p. 657; *White* v. *Stamford,* 37 Conn., 578. And "towns may make such regulations for their welfare, not concerning matters of a criminal nature, nor repugnant to the laws of the state, as they may deem expedient." Gen. Stats., Rev. 1888, § 128. Under such authority, the town of Westport acquired said bridge and draw, and at its town meetings, and through its selectmen, provided for the appointment of a draw tender, and the management of said draw. Towns are required to build and maintain all necessary highways and bridges within their limits. The town, having assumed the construction and maintenance of a bridge at this point, will not now be allowed to claim that it is not required to maintain it. *Village of Marseilles* v. *Howland,* 124 Ill., 547; *Requa* v. *City of Rochester,* 45 N. Y., 129. As already seen, under the statute of 1873, it was further enacted that no bridge without a draw should be built or maintained across any water navigated by open or deck vessels.

Under these circumstances, I do not see how it can be claimed that the town had no power to determine whether it would permit its draw to be managed and operated by its own agent, or would leave it to be operated, as formerly, by any irresponsible person who might have occasion to pass through it. If it has thus undertaken to manage its property, it should not now be allowed to claim that such un-

Greenwood et al. *v.* Town of Westport.

dertaking was unauthorized, or *ultra vires.* *Williams* v. *Cummington*, 18 Pick., 312; *Mayor* v. *Sheffield*, 4 Wall., 189. All the cases cited by defendant, upon the claim of *ultra vires*, to show that the town cannot be held liable for the negligence of its agents, are where acts were done, or contracts made, which were necessarily wholly outside of the corporate powers of the town; such as appropriating money from the treasury of the town, to pay bounties to inhabitants of the town drafted for the war, or to such substitutes as they might furnish; or for a Fourth of July celebration; or the expending of money by a committee for a certain purpose beyond the amount specifically appropriated for such purposes in the town meeting. The question of liability in such cases is governed by an entirely different principle from that applied in actions *ex delicto.* Dillon, Mun. Corporations, § 971; *Salt Lake City* v. *Hollister*, 118 U. S. 256. If the wrongful act be not wholly *ultra vires*, then the corporation is liable for such negligence. Dillon, § 968, and cases. The general rule is well settled that a municipal corporation is liable for the negligence of its agents or officers, in reference to matters within the general powers of the corporation, though not specifically conferred. Dillon, §§ 971, 979, 980.

In *Weisenberg* v. *Winneconne, supra,* the Supreme Court of Wisconsin says, in reference to the management of a drawbridge by the defendant town :—" The town had the right to assume such power, right and duty; and this being so, the town is liable for neglect of such special duty, as any corporation or individual would be under the same circumstances." And in the carefully considered case of *Houfe* v. *Town of Fulton*, 34 Wis., 608, where a town sought to escape liability for injuries caused by the insufficiency of a bridge over a navigable stream, on the ground that it was not a lawful structure, Chief Justice Dixon held that the maintenance of such bridge was within the scope of the corporate powers of said town, and that said bridge, having been adopted by said town, it was estopped to set up such defense. See also *Mayor* v. *Sheffield, supra.*

If these conclusions be correct, there can be no question

that the town is liable for negligence in the exercise of this power in the same way, and to the same extent as a private corporation exercising such powers. "Municipal immunity does not reach beyond governmental duty." Judge PARDEE, in *Weed* v. *Borough of Greenwich,* 45 Conn., at 183. It is settled that a private corporation would be liable under such circumstances. *Pa. R. R. Co.* v. *Cent. R. R. of New Jersey,* C. C. A., 2d Circuit, 1893; *Blanchard* v. *W. U. Tel. Co.,* 60 N. Y. 510; *In re Pratt,* 24 Fed. Rep., 335, 25 id., 799; *The City of Richmond,* 43 id., 85. In voluntarily assuming such undertaking, the town is held to impliedly contract for the exercise of due care, and that it will respond in damages resulting from negligence therein. *Galveston* v. *Posnainsky,* 62 Tex. 118. The town having voluntarily undertaken to operate said draw, could not wait until the vessel came up to the bridge and then, having led the libelant to believe that it would open the draw, and, having failed so to do, escape liability on the ground that it was under no legal obligation to operate it. It was at least bound to give seasonable notice that it disclaimed such obligation. Jones on Negligence of Municipal Corporations, § 119, and cases cited; *Edgerton* v. *Mayor,* 27 Fed. Rep., 233, and cases cited; *Thorp* v. *Brookfield,* 36 Conn., at 323; *Sewell* v. *Cohoes,* 75 N. Y., at p. 52, and cases; *Village of Marseilles* v. *Howland,* 124 Ill. 547.

Public governmental duties are such as pertain to the administration of general laws for the benefit and protection of the whole public, the discharge of which is delegated, or imposed, by the state, upon the municipal corporation. *Hart* v. *The City of Bridgeport,* 13 Blatchf., 293; *City of Galveston* v. *Posnainsky,* 62 Tex. 118. "If such duty is granted, or imposed upon the municipality as a public instrumentality of the state, for public purposes exclusively, it belongs to the corporate body in its public, political or municipal character." *Bailey* v. *Mayor,* 3 Hill, 539; *Hill* v. *Boston, supra.* "There is no mode by which to determine whether a power or duty is governmental or not, except to inquire whether it is in its nature such as all well ordered governments exercise gener-

ally for the good of all, and one whose exercise all citizens have a right to require directly or by municipal agency, and, whether it has ever been assumed or imposed, as such, by the government of this state, and would have been exercised by the state, if it had not been by the city. Tested by these criteria, the extinguishment of fires is not a public, governmental duty." Chief Justice BUTLER, in *Jewett* v. *The City of New Haven*, 38 Conn., 389.

Tested by these criteria, it does not seem that the voluntary action of this town in opening and closing this draw, in the absence of general or special legislation, for the protection of the bridge itself, or for the convenience of navigators and the benefit of the wharves above the bridge, or to provide for the convenience and safety of those persons having occasion to travel across the bridge, and to avoid unnecessary obstructions to the highway, can be considered, in any sense, a public, governmental act. *Maxmalian* v. *Mayor*, 62 N. Y. 162.

Furthermore, even if the town, acting under the authority of the state, might have obstructed navigation at this bridge, Congress might, at any time, interfere to remove such obstruction. *Willamette Iron Bridge Co.* v. *Hatch*, 125 U. S., 1; *South Carolina* v. *Georgia*, 93 U. S., 4. And it may fairly be assumed that the town has undertaken thus to operate said draw for its own welfare, and in order to avoid the effects of such interference by Congress, and has, therefore, impliedly contracted with those having occasion to pass through said draw, that it will seasonably operate the same, provided no such congressional legislation is sought. *Edgerton* v. *Mayor, supra.* " Private or corporate powers are those which the city is authorized to execute for its own emolument, and from which it derives special advantage, or for the increased comfort of its citizens, or for the well ordering and convenient regulation of particular classes of the business of its inhabitants, but are not exercised in the discharge of those general and recognized duties which are undertaken by the government for the universal benefit." Judge SHIPMAN, in *Hart* v. *Bridgeport*, 13 Blatchf., at p. 293. Where

an element partly commercial comes in, a liability is usually enforced, the ultimate question being whether the legislature intended that the town should be liable.    *Mount Hope Cemetery* v. *Boston*, 158 Mass., 513.

The distinction between the public capacity of towns, in the discharge of duties imposed on them by the legislature for the public benefit, and their private character, in the management of property and rights voluntarily held by them, is not unworthy of remark in determining this question of liability.    In this case, the town voluntarily assumed the rights and obligations of a private chartered corporation, and has ever since exercised them without other authority than that derived from the town meeting, and the acquiescence of its inhabitants.    See *Mount Hope Cemetery* v. *Boston*, 158 Mass., p. 512; Dillon, §§ 66, 68, 971, 985; *Oliver* v. *Worcester*, 102 Mass., 489; *Jones* v. *New Haven*, 34 Conn., 1; *Hill* v. *Boston*, *supra*; *Haskell* v. *New Bedford*, 108 Mass., 208.

It is further to be borne in mind that the rule that a private action cannot be maintained against a *quasi* corporation for neglect of public duty unless the action be given by statute, is of limited application.    "It is applied in the case of towns only to the neglect or omission of a town to perform those duties which are imposed upon all towns without their corporate assent, and exclusively for public purposes, and not to the neglect of those obligations which a town incurs when a special duty is imposed on it with its consent, express or implied, or a special authority is conferred on it at its request. In the latter case, a town is subject to the same liabilities, for the neglect of those special duties, to which private corporations would be if the same duties were imposed, or the same authority conferred on them, including their liability for the wrongful neglect as well as the wrongful acts of their officers and agents."    Justice METCALF, in *Bigelow* v. *Randolph*, 14 Gray, 541.    Judge CARPENTER, in *Jones* v. *New Haven*, 34 Conn., at page 13, says : "This rule of law is of very limited application.    It is applied in the case of towns only in the neglect or omission of a town to perform those duties which are imposed on all towns without their

corporate assent, and exclusively for public purposes." It is well settled that for acts causing injury in performing work which is within the general powers of a town, though not specifically conferred, or for negligence in the performance of a corporate duty, in which the party injured has an interest, or for the improper management and use of its property, a town is liable in the same manner as private corporations and natural persons. Dillon Mun. Corp., §§ 971, 980, 985. As is said in the leading case cited by counsel for defendant, in Massachusetts, where the doctrine of exemption of towns from liability has been carried further than in any other state :—" If a city or town negligently constructs or maintains the bridges or culverts in a highway across a navigable river, or natural watercourse, so as to cause the water to flow back upon and injure the land of another, it is liable to an action of tort to the same extent that any corporation or individual would be liable for doing similar acts," because, " in such cases the cause of action is not neglect in the performance of a corporate duty rendering a public work unfit for the purposes for which it is intended, but it is the doing of a wrongful act causing a direct injury to the property of another outside of the limits of the public work." Chief Justice GRAY, in *Hill* v. *Boston, supra.* The court further says, at page 365 : " In *Brownlow* v. *Metropolitan Board of Works*, 13 C. B. (N. S.) 768, and 16 C. B. (N. S.) 546, a public board authorized to construct sewers, but which in excess of its authority had made an obstruction which was a public nuisance in the bed of a navigable river, was held liable to one whose vessel suffered injury thereby. These cases fall within the same principle as *Haskell* v. *New Bedford*, 108 Mass., 208, and other decisions of this court, already cited, in which, by a wrongful act, a direct injury was done to the plaintiff's property beyond the lawful limits of the public work." An examination of these cases will show that they conclusively establish liability in a case like the present.

From these considerations I am led to conclude that the defendant town, having acquired the property of the pri-

vate corporation, and in addition to the duties exercised by it having, without any statutory or other obligation, voluntarily assumed and undertaken, under its general powers, since 1880 to open and close the draw for purposes which, under the circumstances, may be assumed to have been, or which do not appear not to have been, for its own benefit or the benefit of its property, and having recognized the right of commerce to have said draw so operated, and having either impliedly contracted with the public to operate it, or having at least invited the public to believe that it had recognized such right, cannot withdraw from said undertaking without seasonable notice, and that it is under the same obligations in reference to the performance of said undertaking, and is liable to the same extent for negligence therein as a private person or corporation engaged in a similar undertaking for a purely private purpose. Here, the damage was the direct result of the negligence of the town in the ministerial execution of an undertaking which it had assumed and attempted to perform.

It seems to me further, that these conclusions are supported by the cases cited in Connecticut and Massachusetts. Thus in *Mootry* v. *Danbury*, 45 Conn., 550, the town, being bound to maintain a bridge across a stream of water on a highway, so constructed it that there was not sufficient space to allow the water to pass off freely, and thereby caused it to set back on the land of the plaintiffs. The court, in its opinion, having cited from and approved the dissenting opinion of Chief Justice BUTLER, in *Judge* v. *Meriden*, 38 Conn., 90, said : " It seems that that learned jurist had no doubt that towns were liable for the consequences of an improper construction of a highway. We discover nothing in the opinion of the court which is inconsistent with that view. The Chief Justice and other members of the court differed only in the construction of the record." But the case of *The Danbury & Norwalk Railroad Co.* v. *Town of Norwalk*, 37 Conn., 109, is more directly in point. The only difference between that case and this is, that that was a petition in chancery to restrain the town from committing the wrong, and this is an

action at law to recover damages for the wrong committed. The principle applicable to the two cases is the same. The injunction was granted only because the contemplated action of the town was an invasion of the legal rights of the railroad company. If that was so in that case it is in this; and if the defendants have invaded the legal rights of the plaintiffs they are responsible. The conclusion is inevitable. The reasoning of the court assumes that a town would be liable in a case like this. In speaking of the power and duty of towns in respect to highways, the court says (p. 119): "The authority is clear, and the duty imperative; always subject however to the salutary qualification interposed for the protection of others, and this authority shall be so exercised, and this duty discharged in such a manner, as to occasion no wanton injury to the property or rights of other persons, natural or artificial." This is sound law, and is abundantly sustained by the authorities cited. It seems to us impossible to hold that this town is exempt without overruling that case. We regard the principle here enunciated as sound, and in harmony with decided cases elsewhere.

In *Danbury* v. *Norwalk*, the town had undertaken to construct a drain which was to discharge water into a cut to the injury of the property of the railroad company. The court there said: "The question whether such a corporation as the respondent, in consequence of any immunity inherent in its municipal character, is exempt from those liabilities for malfeasance for which individuals and private corporations would be liable in a civil action by the party injured, is no longer an open one. The acts of the character of those now in question, involved in the necessary performance of a duty prescribed by a municipal ordinance, are strictly ministerial, and when performed by an officer or agent by direction and for the benefit of the corporation, no exemption from liability by the principal can be interposed when, from negligence or willfulness, they are so performed as to produce unnecessary damage to other parties. *Perry* v. *City of Worcester*, 6 Gray, 544; *Sprague* v. *City of Worcester*, 13 id., 193; *Rochester. White Lead Co.* v. *City of Rochester*, 3 Comstock,

464; *Mayor etc. of New York* v. *Bailey*, 2 Denio, 433; *Mayor etc. of New York* v. *Furze*, 3 Hill, 612; *McCombs* v. *The Town Council of Akron*, 15 Ohio, 476."

In *Carson* v. *City of Hartford*, 48 Conn., 90, in *Morse* v. *Fair Haven East*, id., 222, in *Healey* v. *New Haven*, 47 id., 305, and in *Bronson* v. *Borough of Wallingford*, 54 id., 520, the court cites and approves *Mootry* v. *Danbury*, *supra*.

In the latter case, where there was no accusation of negligence but merely of an intent to change the grade of a highway, the court distinguishes between the facts therein and the case of *Mootry* v. *Danbury*, and says: " It is only in special cases where wanton or unnecessary damage is done, or where damage results from negligence, that they, (towns) can be held responsible." And in *Healey* v. *New Haven*, *supra*, the court says: " The town or city, as the case may be, is practically the owner of the land for all the purposes of a highway. So long as it is used strictly for those purposes with due regard for the rights of others, no liability attaches. If however the work is improperly or negligently done, thereby causing damage to others, the corporation like an individual is liable. *Mootry* v. *Danbury*, 45 Conn., 550."

Further cases upon this subject are collected and discussed in *Weed* v. *Borough of Greenwich*, 45 Conn., 170, where the borough was empowered to remove an encroaching fence, for the advantage of the borough, and to improve property therein. The principles therein involved are strikingly like those in the case at bar, and the decision is a direct authority in support of the rule that corporate liability in such cases is the same as individual liability.

In Massachusetts the same distinction is made, and the rule as above stated is supported by the following and many other cases in addition to those already cited, namely : *Perry* v. *Worcester*, 6 Gray, 544; *Hawks* v. *Charlemont*, 107 Mass., 417; *Waldron* v. *Haverhill*, 143 id., 582; *Doherty* v. *Braintree*, 148 id., 495. In the latter case the town voted to take charge of the work, and appointed a committee of five to act with the selectmen, all as agents of the town.

It seems to me, from these decisions that, even if the op-

eration of this draw was connected with the maintenance of the highway, or for other reasons was the performance of a public governmental duty, the defendant would be liable for negligence upon the facts proved in this case. It will be noticed that most of the Connecticut cases cited have been decided since the cases relied on by the learned counsel for defendant. The well recognized distinction is nowhere more clearly and accurately stated than in *Goddard* v. *Inhabitants of Harpswell*, 84 Me., 499, decided in 1892, where the court, reviewing the Massachusetts decisions, says: "The distinction between the two classes of cases is clear. In the one class the municipality has interfered by giving directions, or taking charge of the work by its own agents, as in *Woodcock* v. *Calais*, 66 Me., 234. In the other class the municipality has not interfered 'but has left the work to be performed by the proper public officers, in the methods provided by the general laws.'"

But the defendant contends that, in this case, the question of liability must be determined by the law of Connecticut, and that what the law of Connecticut is appears from the cases cited by him, and from the case of *French* v. *Boston*, 129 Mass., 592.

The libelant contends that this is a question of general common law or commercial law, and that if there is any conflict between the law of Connecticut and the general law, this court should be governed by the general rules of law, and especially by the decisions of the federal courts. He further contends that upon this question of damages arising from a maritime tort, it is the duty of a court of admiralty to administer relief according to its own procedure and rules, and to enforce its rules of liability so as to do justice. As already stated, it does not seem that there is any conflict, under the facts in this case, between the decisions of Connecticut and the general rules of law. As has been already shown, it is settled by the repeated adjudications of the Supreme Court of the United States, that the rule of liability established in Massachusetts, is not in harmony with the

general rule in this country, nor with the decisions of the federal courts.

In this connection it seems desirable to examine the decisions of the Supreme Court of the United States upon the distinction between local laws, where the federal courts follow the decisions of the courts of the state, and general law, where the federal court is bound to exercise its independent judgment.

" What constitutes a contract of carriage is not a question of local law upon which the decision of a state court must control. It is a matter of general law upon which this court will exercise its own judgment." *Myrick* v. *Michigan Central R. R. Co.*, 107 U. S., at 109. " On a question of general common law, the federal courts administering justice in New York have equal and co-ordinate jurisdiction with the courts of that state." *R. R.* v. *Lockwood*, 17 Wall., 357. When private rights are to be determined by the application of common law rules alone, the federal courts are not bound by the decisions of the state courts. *Chicago* v. *Robbins*, 2 Black, 428; 4 Wall., 657. Nor are they bound by the decisions of said courts on general questions of commercial law. *Hough* v. *R. R.*, 100 U. S., 218; *Oates* v. *National Bank*, 100 id., at p. 246. This whole subject is exhaustively discussed by the Supreme Court of the United States in *B. & O. R. R.* v. *Baugh*, 149 U. S., 371, reviewing *Swift* v. *Tyson* and all the leading cases decided since that date in said court. Under said decisions, and especially the decision in *Claiborne County* v. *Brooks*, 111 U. S., 400, it seems clear that a federal court administering the rules of the common law within a state, is bound by the local policy of each state as to the extent of the powers and liabilities of its municipal corporations wherever such powers and liabilities have been determined by legislative authority or the settled decisions of its highest courts, but that where the law relating to such a question " is unsettled and doubtful, such court must exercise its independent judgment, and declare the law upon the best light it can obtain." " Where the law has not been thus settled, it is the right and duty

of the federal courts to exercise their own judgment; as they always do in reference to the doctrine of commercial law and general jurisprudence." *Burgess* v. *Seligman*, 107 U. S., 20.

In the present case there is neither legislative act nor decision of a Connecticut court establishing freedom from liability for negligence, in the absence of legislation, before the court.

But in *French* v. *Boston, supra,* cited by defendant, the city of Boston was held not liable for damages caused by the detention of a vessel owing to the fact that the draw was of insufficient width for the vessel to pass through. And, while the case may be distinguished from the one at bar, in the fact that, while the obligation was imposed by statute, no liability was imposed for negligence, and the municipality "had left the work to be performed by the proper public officer," and for other reasons, yet it is an authority in support of the claim of defendant. But even if it were a direct decision in its favor, it would not show that the courts of Connecticut would follow such decision. For this reason, and because of the conclusions reached after the very careful examination of the decisions of this state as to the law herein, it seems to me that, at most, the defendant is only entitled to claim that the question herein presented, is still an open one, so far as the courts of Connecticut or the acts of its legislature are concerned.

It remains to consider whether the principles thus far stated, are applicable in a court of admiralty. How far the maritime law, administered by this court of admiralty, may be enforced for the removal of obstructions in navigable rivers, is still an open question. *Willamette Iron Bridge Co.* v. *Hatch,* 125 U. S., 1. But there is no question upon authority or principle, as to the power of a court of admiralty to administer relief under the facts in this case. In *Liverpool Steam Co.* v. *Phenix Ins. Co.*, 129 U. S., at p. 443, the court say: "The decisions of the state courts certainly cannot be allowed any greater weight in the federal courts when exercising the admiralty and maritime jurisdiction exclusively

vested in them by the constitution of the United States." The admiralty and maritime jurisdiction is conferred on the courts of the United States, and state laws cannot enlarge or restrict said jurisdiction, but the admiralty courts have jurisdiction to enforce admiralty rights, according to their own procedure. Upon such questions the decisions of the highest court of the state do not relieve the admiralty court from the duty of exercising its own judgment. *The J. E. Rumbell*, 148 U. S., 1; *The Lottawanna*, 21 Wall., at p. 586; *The Guiding Star*, 18 Fed. Rep., 263. In *Steamboat Co.* v. *Chase*, 16 Wall., at 531, where an action had been brought under a state statute in the state court, by an administrator, for damages for injuries by a collision, resulting in death, Justice CLIFFORD said: "If the injured party had survived, no doubt is entertained that he might have sought redress for his injuries, in the proper admiralty court, wholly irrespective of the state statute enacting the remedy there given, and prescribing the form of action and the measure of damages, as the wrongful act was committed on navigable waters within the admiralty and maritime jurisdiction conferred upon such courts, by the constitution and the laws of Congress." The general rule of the federal courts on this question is enforced in admiralty. *The Titan*, 23 Fed. Rep., 413; Holt on Concurrent Jurisdiction, 208.

The various decisions of the federal courts hereinbefore cited, and the reasons leading to the conclusions therein, seem to show that where a question of maritime right is presented to an admiralty court, that court, at least in the absence of legislation establishing a contrary rule, may enforce said right, and provide remedies for its violation in accordance with the rules of admiralty. In *Boston* v. *Crowley*, 38 Fed. Rep., 202, Judge COLT, affirming the decree of the district court in admiralty, in a case almost precisely like the one at bar, held the city of Boston liable, and examined therein the cases bearing upon the questions raised in this case. He held that the question involved was one "of general municipal or commercial law, and, as such, this court should follow the decisions of the Supreme Court of the

United States." In *Edgerton* v. *The Mayor*, 27 Fed. Rep., 230, Judge BROWN, upon a careful consideration of the same question, held the city of New York liable for negligence in operating a draw in a bridge across the Harlem river. He held, citing several cases, that, by undertaking to manage the draw, the state and city had recognized the right of vessels to pass through without any appeal to the national authorities to protect that right, and that the city was, therefore, responsible for negligence therein. And, in *Hill* v. *Board of Chosen Freeholders of Essex County*, 45 Fed. Rep., 260, Judge GREEN, sustaining the jurisdiction of admiralty over a claim for damages for negligence in the management of a drawbridge, declares that the action therefor is based upon a maritime tort, of which courts of admiralty have plenary jurisdiction. The same general rule of obligation and liability, is laid down, in *Weisenberg* v. *Winneconne, supra*, by the Supreme Court of Wisconsin.

Where municipal corporations control drawbridges, they must furnish a reasonably safe passageway for vessels, and are responsible for damages coming from a neglect of this duty. Jones on Negligence of Municipal Corporations, § 123. The duty of maintaining a drawbridge over navigable waters, includes the obligation to properly provide for the safe passage of vessels through the draw. 2 Amer. & Eng. Encyc. Law, 594. In the case of *Wiggins* v. *Boddington*, 3 Car. & Payne, 544, cited by the Circuit Court of Appeals, in *Pa. R. R. Co.* v. *Cent. R. R. Co., supra*, the bridge was erected in pursuance of the acts of Parliament, and the corporation was established for the express purpose of improving the port of London, but the rule of liability for negligence was the same as that applied by the Circuit Court of Appeals in the above case, and which, it seems to me, should be applied herein.

It is finally to be borne in mind that, in actions for torts arising from negligence, courts of admiralty have not circumscribed themselves within the positive boundaries of mere municipal law, but have proceeded in regard to questions of damages, upon enlarged principles of equity and justice. Thus, in cases of mutual fault, the damages may

Greenwood et al. *v.* Town of Westport.

be divided. And this amelioration of the common law rule is no longer limited to cases of collision, but is applicable to all cases of marine torts founded upon negligence, and prosecuted in admiralty. *The Max Morris*, 137 U. S., 1. When a party elects to bring his suit in the admiralty court, he is bound by the rules and course of proceedings, and is entitled to the remedies applied in that forum, including its rules for estimating damages. *Atlee* v. *Packet Co.*, 21 Wall., 339; *The Max Morris*, *supra*. If a court of admiralty can thus enforce its rules of damages so as to authorize a recovery when justice requires it, although no such right of recovery exists at common law, I see no reason why it should not enforce its rule of liability in accordance with enlarged principles of justice, in a case like the present.

In view of the foregoing considerations, it seems to me that the town is liable. The libel may be amended in conformity with the facts herein found. Let the case be referred to a commissioner to find the damages and report, in accordance with the ordinary rules in such cases.