ARTHUR M. BROWN, STATE'S ATTORNEY, EX REL.
C. HUNTINGTON LATHROP
*vs.*
EDWARD H. McCALL, JR., ET AL.

Superior Court      New London County      File No. 14870

## MEMORANDUM FILED AUGUST 26, 1942.

*Hibberd R. Norman,* of Norwich, for the Plaintiff.

*Charles V. James,* of Norwich, for the Defendants.

Memorandum of decision on motion to quash alternative writ of mandamus.

BALDWIN, J.   The respondents are the selectmen of the Town of Lebanon.   The relator, a taxpayer in this town, has brought this action in which he asks the court to issue a peremptory writ of mandamus ordering the selectmen of Lebanon to accept delivery of a town clock and to execute a contract with the First Congregational Church of Lebanon providing for the installation of the clock in the steeple of the church.

It appears from the alternative writ that the town, at a special meeting held on April 13, 1942, due notice of which had been given, adopted the following resolution: "Resolved that the vote for the purchase of a town clock passed at a Lebanon town meeting duly warned and held on the 6th day of October, 1941, be, and the same hereby is rescinded."   "Be it further resolved: That the town purchase a town clock and the sum of $1,497.00 is hereby appropriated for such purpose." "Be it further resolved: That the Selectmen of the town be and they are hereby authorized to install said clock in the steeple of the First Congregational Church of said town, always provided that said church shall agree in writing with said town that the title to and ownership of said town clock shall be and always will remain in and with said town and with the right on the part of said town to service and maintain said clock after its installation and to remove the same from said steeple at any time it may see fit to do so; and the Selectmen are hereby authorized on behalf of the town to enter into such an agreement with the church."

It further appears from the alternative writ that a contract was prepared for execution by the selectmen of the town and the trustees of the church, which contract provided for the installation of the clock in the steeple of the church by the town and that the title and ownership of the clock with the right to maintain and remove it at pleasure should remain in the town, and, also, that the respondents, selectmen, have refused and neglected to execute this contract.

The respondents' motion to quash questions the right of the court, under the allegations of the alternative writ, to control the action of the selectmen by mandamus, and it also attacks the authority of the town to adopt a vote providing for the installation and maintenance of a town clock and the making of an appropriation therefor and the validity of the authoriza- tion of the selectmen to enter into this particular contract with the church providing for such installation and maintenance.

If the authority in the town to. carry into execution the undertaking contemplated existed, which the respondents ques- tion, the selectmen, in the exercise of a reasonable discretion, would be justified in their neglect and refusal to execute this contract, since it does not include any appropriate description of the type or kind of clock to be installed, nor does it in- clude sufficient description of the location or method of instal- lation, nor does it appear to have been executed on behalf of the church or that any person or group of persons have been authorized to execute the contract on behalf of the church.

If authority in the town to carry out an undertaking of this character existed, the selectmen, in the exercise of a reasonable discretion, would be entitled to require that the contract presented to them for their execution should include a reasonably sufficient description of the clock to be installed, the location and manner or method of the installation, and that the contract was an executed contract on behalf of the church and that it appear that it was executed by some person or persons duly authorized by the church to execute it.

The contract set up in the alternative writ does not include these provisions or conditions.

As to the authority of the town to purchase, install and maintain a town clock, it becomes necessary to consider the general authority which a town may exercise in the absence of specific authority delegated by statute to the town. "A

municipal corporation....possesses no powers or faculties not conferred upon it, either expressly or by fair implication, by the law which created it, or by. other laws, constitutional or statutory, applicable to it. It is a creature of the law established for special purposes and its corporate acts must be authorized by its charter or other laws applicable thereto. Every investigation, therefore, of its powers must be conducted from the standpoint of such laws. Wherefore, the usual formula, invariably supported by judicial utterances and judgments, in substance is: That the only powers a municipal corporation possesses and can exercise are: (1) Those granted in express terms; (2) those necessarily or fairly implied in, or incident to, the powers expressly granted; and (3) those essential to the declared objects and purposes of the municipality, not merely convenient, but indispensable." 1 McQuillin, Municipal Corporations (2d ed. [Revised vol.] 1939) §367, citing Bridgeman vs. City of Derby, 104 Conn. 1, 45 A.L.R. 728, and New London vs. Brainard, 22 Conn. 552. See, also, 1 McQuillin, supra, §368.

The relator contends that by immemorial usage towns have built town houses, provided office accommodations, furniture, vaults for records, town clocks, hay scales, pounds and other things for the accommodation and convenience of the public and that the Town of Lebanon has the authority to buy a clock and install and maintain it in the steeple-of the church for the accommodation and convenience of the public, and he cites, in support of this claim, White vs. Stamford, 37 Conn. 578, 586; Watson vs. New Milford, 72 id. 561, 564; Willard vs. Newburyport, 12 Pick. (Mass.) 227, and 1 McQuillin, supra, §401. Town houses, office accommodations and the other things mentioned, with the exception of town clocks and possibly hay scales, are absolute necessities for the orderly carrying on of the purposes and objects of the towns; they are not merely conveniences, as are town clocks, and, in most instances, they are authorized either by special legislation or the General Statutes, the latter of which are filled with acts of authorization for such necessary accommodations.

We may take judicial notice, I think, of the fact that some municipalities, in the erection of a building for municipal use, may have installed a clock which is not a public necessity but is so located as to be a public convenience. This a town may do as an incident in the construction of a building contributing to the convenience and ornate appearance of the building.

This is quite a different matter than the purchase and installation of a clock by a town upon private property.

The statutes include no reference to "hay scales", but they do provide for scales and weights and measures and public weighers and fees which public weighers may charge. (Gen. Stat. [1930] §§373, 374.)

In the *Stamford* case, *supra,* cited by the respondents, the Town of Stamford was erecting a town hall; the building included space for offices to be rented to private individuals; an injunction was sought because of the inclusion in the building of such office accommodations; the town was acting under the authority of a special act of the Legislature and the injunction was denied.

In the *New Milford* case, *supra,* p. 564, the court said: "Towns may build town-houses and any necessary outbuildings ....If by connecting with a sewer they can save the expense of outbuildings or better accomplish the purpose these might otherwise serve, a reasonable construction of the statute gives them the right so to do." This was *obiter.* The action was to recover damages resulting from the fouling of land by reason of sewage emptied into a stream running through the land.

The case of *Willard vs. Newburyport, supra,* was an action brought by the plaintiff to recover compensation for repairs to a clock located in a church steeple, which repairs were made some time prior to March, 1827. The clock was purchased by funds raised by subscription. In the trial, ownership was disclaimed by the town and also by the church parish. In 1806 the town had voted to pay the expense of its winding and repairs and had done so until in 1826, when it was found to need rather extensive repairs that would cost $150, and the selectmen were informed of the result and they conferred together and decided that the plaintiff should make the repairs, which he did. A dispute arose over the payment of the bill. At a meeting of the town in March, 1828, it was voted "to commit the matter to the selectmen, with authority to allow what they should see fit." The case was decided in 1831. At page 231 of the opinion the court said: "A provision for one or more public clocks for the common regulation of time, seems to be an object of common convenience and necessity, in all large towns and populous villages; and the power to provide for them seems not only to be incidental to the proper execution

of several powers expressly given to them, as the regulation of schools to which time is important, but we are all of opinion, that it is warranted by long usage and practice."

In the days when the cause of action in the *Newburyport* case arose there was far greater necessity for public maintenance of some time-giving instrument for public use than in these modern times when an adult, without some sort of timepiece, is the exception rather than the rule, and those conditions gave rise to "long usage and practice" of those days upon which the decision was based.

New England towns, like other public corporations, can exercise no powers except such as are expressly granted to them, or such as are necessary to enable them to discharge their duties and carry into effect the objects and purposes of their creation. *Keegan vs. Thompson,* 103 Conn. 418, 421; *Abendroth vs. Greenwich,* 29 id. 356, 363. "They act not by any inherent right of legislation, like the legislature of the state; but their authority is delegated." *Willard vs. Killingworth,* 8 Conn. 247. "It has sometimes been claimed that Connecticut towns 'may exercise any authority not expressly delegated to some other part of the body politic'." *Douglass, The Civil Government of Connecticut,* pp. 59, 60. But Connecticut towns, it has been held, have no original or inherent powers whatever. All their powers are expressly granted by the Legislature, or are such as are necessary to the performance of their duties as territorial and municipal corporations. *Webster vs. Harwinton,* 32 Conn. 131. Hence they do not possess any inherent or prescriptive rights or powers, or any rights or powers not expressly or impliedly delegated to them by the legislative power of the state. *Booth vs. Woodbury,* 32 Conn. 118. See, also, *McQuillin, supra,* §400.

The Town of Lebanon had no authority to take the action in relation to the installation and maintenance of a town clock that it attempted and the action taken is not of legal effect.

Mandamus may not be employed to establish a right. It may be employed to enforce a clearly existing legal right. *Chatfield Co. vs. Reeves,* 87 Conn. 63, 64, 65; 38 *C.J. Mandamus* §56, p. 582.

The motion to quash the alternative writ is granted.